Argued and submitted August 23, affirmed
December 10, 1979, reconsideration denied January 24,
petition for review allowed February 20, 1980

**STATE OF OREGON,**
*Respondent,*

*v.*

**JAKE CLARENCE REYNOLDS,**
aka Kenneth Eugene Moss,
*Appellant.*

(No. 78-6-284, CA 12621)

603 P2d 1223

[620]

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the briefs was Gary D. Babcock, Public Defender, Salem.

James M. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were James A. Redden, Attorney General, Salem, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Defendant appeals from the judgment entered on convictions by a jury for aggravated felony murder, robbery in the first degree, and manslaughter in the first degree. First assigned as error is the denial of defendant's motion to suppress evidence obtained in a search consented to by defendant's wife. Defendant argues that his wife's consent was involuntary. Eight other assignments concerning procedural errors at trial will be discussed seriatim below.[1] The facts of the underlying crimes are therefore unnecessary to be detailed here.

At about 8:30 in the morning, defendant was inside his trailer house residence with his wife and child when he was instructed to emerge by police officers using a bullhorn. He did so and was arrested. His wife and four-year old son followed defendant outside the house. The police took defendant away for booking. Immediately after the arrest, police secured the trailer house by posting officers at the doors.

Defendant's wife testified that during the arrest no one would tell her what was happening, that officers kept asking her in different ways to consent to a search of the house, that she would not consent to it and that she wanted more information which she knew they would have to give her if they got a search warrant. She testified she was told she had been implicated and could be arrested as an accomplice if she really had been involved, that the district attorney was considering arresting her as a material witness and that if she were held, her son would be made a ward of the court because she had no relatives in the area. She was not allowed to re-enter her home or to leave the vicinity. She testified she signed a consent form because she could not take the chance that her boy would be taken. She also testified that she realized once the police obtained a search warrant they would

---

[1] The last four assigned errors were raised by defendant *pro se* in a separate brief, submitted by leave of this court.

search no matter what she said, and she noted that her boy was cold and hungry at the time.

A police officer testified that the wife was informed of the charges against her husband right after her husband's arrest, that the witness explained to her the police thought there was a gun in the house and wanted her consent to search for it and that when she did not assent to a search, he told her "Fine." He then left to telephone the district attorney to initiate a search warrant proceeding. In that discussion the wife's possible role as a material witness or an accomplice was broached. The officer returned to the wife and informed her that a search warrant was in the process of being obtained, that the district attorney saw no problem in obtaining it, that the process would take from two to four hours, and that it would expedite matters if she would consent to a search of the house. The officer also testified that the wife asked what would happen, and he told her there was a possibility that she would be considered a material witness in the case and that some arrangement would have to be made for her son's care if she were held and had no relatives in the area. He denied mentioning anything to her about her being considered an accomplice.

When that officer was then called away, a second officer continued to talk to defendant's wife. He testified that he told her that if they waited for a search warrant, she would have to remain there with police until the search warrant arrived. She then agreed to the search. He read her the consent form, and she signed it.

On defendant's motion to suppress evidence obtained in the search, the court ruled that while there may have been an implied threat that she could be taken into custody as a material witness, the police statements were accurate and within the bounds of fairness. The court noted there was no evidence that defendant's wife was told she could be taken into custody at that time. He ruled the consent voluntary

and the search valid. He denied the motion to suppress.

The question of whether consent to search is voluntarily given is a question of fact to be determined by the totality of the attendant circumstances. *State v. Ragsdale,* 34 Or App 549, 554, 579 P2d 286, *rev den* 283 Or 503 (1978). Defendant's wife understood that she could refuse to consent to the search. She did so initially, and her testimony indicated she knew she had that right. The possibility of her being held as a material witness or accomplice, if that were stated by the police, was accurate; those acts could lawfully have been authorized. *Cf. State v. Bopp,* 16 Or App 604, 611-12, 519 P2d 1277 (1974). It is true that defendant's wife was herself in a sort of detention,[2] but voluntary consent to a search may be given by a person even under arrest. *United States v. Watson,* 423 US 411, 424, 96 S Ct 820, 46 L Ed 2d 598 (1976); *State v. Flores,* 280 Or 273, 278, 570 P2d 965 (1977). The "most reasonable construction" to be given the facts under those circumstances, *State v. Ward,* 37 Or App 591, 600, 588 P2d 72 (1978) (dissent), *vacated and dissent adopted as opinion of the majority,* 38 Or App 425, 590 P2d 296, *rev allowed* 287 Or 123 (1979), is that defendant's wife voluntarily consented to a search of the residence. The motion to suppress evidence was properly denied. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

The second assigned error is the court's admission of statements which defendant asserts were made in the context of plea bargaining and were therefore inadmissible under ORS 135.435(1)(c). Assuming defendant was at this point effectively acting as his own counsel,[3] we think that his offer to "tell the complete story" did not necessarily imply that defendant was offering either to incriminate himself or to

---

[2] Defendant does not claim that the detention of his wife was unlawful, thereby vitiating her consent to the search and tainting the search itself. *Cf. State v. Warner,* 284 Or 147, 166, 585 P2d 681 (1978).

[3] *See* ORS 135.405(2).

[623]

plead guilty to any of the charges; defendant was not bargaining a guilty plea for specific concessions. *See, e.g.,* ORS 135.405(3)(a-c);[4] *cf. United States v. Levy,* 578 F2d 896, 901 (2d Cir 1978) (defendant's statements held admissible since no request made for consideration from prosecutor for defendant's cooperation); *United States v. Smith,* 525 F2d 1017, 1018 (10th Cir 1975) (defendant's statements inadmissible where predicated on an offer to plead guilty to all pending offenses in exchange for being sent to a federal institution). The obvious expectation on defendant's part that his statements would somehow benefit him does not render them inadmissible. *State v. Evans,* 1 Or App 489, 494-95, 463 P2d 378, *rev den* (1970). Defendant's additional contention that he was not effectively advised of his rights immediately prior to making some of the statements is not correct. The evidence shows that on the previous day defendant had been so advised, and he had acknowledged that he understood his rights. The statements were properly admitted.

The third designated error is the court's direction to defendant to say to a witness, for purposes of voice identification, the words used in the robbery, to wit: "Don't anyone move, everybody lie down on the floor." Such evidence, not being testimonial in nature, does not violate the privilege against self-incrimination. *United States v. Wade,* 388 US 218, 222-23, 87 S Ct 1926, 18 L Ed 2d 1149 (1967). The evidence was admissible.

---

[4] ORS 135.405(3):

"(3)   The district attorney in reaching a plea agreement may agree to, but is not limited to, one or more of the following, as required by the circumstances of the individual case:

"(a)   To make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or no contest to the offense charged;

"(b)   To seek or not to oppose dismissal of the offense charged if the defendant enters a plea of guilty or no contest to another offense reasonably related to the defendant's conduct; or

"(c)   To seek or not to oppose dismissal of other charges or to refrain from bringing potential charges if the defendant enters a plea of guilty or no contest to the offense charged."

■

The fourth claimed error is the admission of testimony of a police officer who had been present in the courtroom that defendant altered his voice during the voice demonstration. Defendant asserts error in that the parties had moved for the exclusion of witnesses to the voice demonstration pursuant to ORS 45.510.[5] After the demonstration, the judge noted out of the presence of the jury that he could tell defendant was altering his voice, and he admitted the officer's testimony. The court also allowed defendant to rebut the officer's testimony with the testimony of defendant's father. The court did not err in admitting the officer's testimony.

■

The fifth error is said to have been the entering of a judgment of conviction for aggravated felony murder, on the theory that there is no distinction between aggravated felony murder and felony murder,[6] and so the higher statutory sentence imposed here for conviction of aggravated felony murder violates equal protection. We recently held in *State v. Cohen,* 42 Or App 297, 600 P2d 892 (1979), that the elements of aggravated murder and felony murder are the same, except that aggravated murder requires that the homicide be personally committed. The sentence for aggravated felony murder, permitted by statute and prescribed in this case, was not error.

■

The sixth error claimed is the court's denial of defendant's motion to participate as co-counsel in his own defense. In *State v. Easton,* 35 Or App 603, 606, 582 P2d 37, *rev den* 284 Or 521 (1978), this court said that the constitutional rights to represent oneself without counsel and to have counsel in any criminal proceeding "cannot be simultaneously exercised." Defendant argues that the Oregon Constitution allows

---

[5] ORS 45.510:

"If either party requires it, the judge may exclude from the courtroom any witness of the adverse party not at the time under examination, so that he may not hear the testimony of other' witnesses."

[6] ORS 163.095 and ORS 163.105, respectively.

both by its terms: "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel ***."[7] As we stated in *State v. Whitlow,* 13 Or App 607, 610, 510 P2d 1354, *rev den* (1973):

> "The fact that the Oregon constitutional provision uses the conjunctive between 'defendant' and 'counsel,' as do many similar provisions in most state constitutions, has repeatedly been held not to mean defendant may intermittently use and then discard counsel. [Citations omitted.]"

Here, after two days of preliminary motions in which defendant was represented by two attorneys, defendant through counsel made his motion to participate as co-counsel. He renewed the motion at the close of the evidence and before final argument. ORS 17.210(4)[8] allows a party a maximum of two counsel for final argument, and one of them would have had to have been discarded to allow defendant to address the jury. Defendant on appeal does not maintain that his representation was not competent. Under those circumstances, denial of defendant's motions was within the discretion of the trial court. *State v. Easton, supra* at 606; *Whitlow, supra* at 610-11.

The seventh error charged is the denial of defendant's motions for mistrial on several grounds. We discuss only the argument that a mistrial should have been declared when the prosecutor in the presence of the jury renewed a motion to call the bailiff and the court reporter to impeach defendant's voice demonstration, after the court had expressly ruled *in camera* that court staff would not be allowed to testify. After denial of the motion, the judge gave a curative instruction to the jury that it should not speculate on the reasons why the court denied counsel the right to call

---

[7] Oregon Constitution, Article I, § 11.

[8] ORS 17.210(4):

"(4) Not more than two counsel shall address the jury in behalf of the plaintiff or defendant; the whole time occupied in behalf of either shall not be limited to less than two hours; and the court may extend such time beyond two hours."

certain witnesses. We have previously held that the trial court has wide discretion in ruling on motions for mistrial depending on the particular facts, and a curative instruction is one factor to be considered. *State v. McFarland,* 30 Or App 93, 97-98, 566 P2d 539, *rev den* (1977). The instruction was appropriate and adequate. The court did not abuse its discretion.

The eighth indicated error is the court's overruling of defendant's objections and failure on its own motion to declare a mistrial with regard to a remark in the state's final argument. The prosecutor exhorted the jury not to let defendant walk out of the courtroom acquitted "[b]ecause the next time it might be one of you at the end of [defendant's] barrel ***." Although a defense objection at that point was overruled, the prosecutor then simply reverted to a discussion of the evidence in the case. We held in *State v. Gill,* 3 Or App 488, 497, 474 P2d 23, *rev den* (1970), that "control over counsel's argument is largely entrusted to the discretion of the trial court." There was no abuse of that discretion.

The last error asserted is the entering of a sentence of conviction for aggravated felony murder. The court first pronounced sentences for the lesser included offenses of robbery and manslaughter and immediately went on to explain that the lesser included offenses "merged" for purposes of sentencing into aggravated felony murder. Defendant's argument that double jeopardy attached the very moment the robbery and manslaughter sentences were uttered is simply absurd.

Affirmed.