THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AARON STEWART, Defendant-Appellant.

First District (2nd Division)  No. 82—2120

Opinion filed March 13, 1984.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Jack M. Bailey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:
Defendant, Aaron Stewart, following a jury trial in the circuit court of Cook County, was convicted of two counts of attempt murder (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 9—1), aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4), armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2) and unlawful use of weapons (Ill. Rev. Stat. 1981, ch. 38, par. 24—1). He was sentenced to 30 years' imprisonment for one attempt murder, 15 years for the second, and three years for unlawful use of weapons; the sentences to run concurrently. The convictions for armed violence and aggravated battery were merged into the attempt murder convictions.

On appeal defendant contends (1) the trial court erred in admitting the victim's bloody clothing into evidence; (2) the court erred in admitting into evidence testimony regarding the nature and extent of the victim's injuries and medical treatment; (3) he was denied the effective assistance of counsel when his attorney failed to call several witnesses to testify in support of his intoxication defense and when his attorney allegedly "abdicated" defendant's defense and "admitted" his guilt during closing argument and (4) because defendant lacked the requisite mental states required to prove the offenses charged, he was not proven guilty beyond a reasonable doubt.

At trial the State called Carol Jackson who testified: on June 19, 1981, she was in a pizza parlor on 61st Street (near King Drive) in Chicago with a friend. There were approximately three other male patrons in the parlor. Defendant entered the parlor and spoke with two of the other customers, left, and returned a minute or two later carrying a shotgun. Defendant then walked out the door. He was not swaying and had no difficulty in talking or walking. She subsequently identified defendant in a lineup.

On cross-examination Ms. Jackson denied telling a defense investigator that while in the pizza parlor defendant was "ranting and raving" and that he was not acting in a rational way.

Police officers William Phillippo and Eugene Domuret each testified that on June 19, 1981, they were in uniform and responded to a reported disturbance at 6100 South King Drive (near the pizza parlor) at about 2:50 a.m. While talking to the complainant, they heard noises sounding like two gunshots. They called for assistance and then walked toward the source of the noises. They saw a man holding a sawed-off shotgun standing in front of a pizza parlor at 352 East 61st Street. They identified defendant as the man with the gun.

The gunman entered the pizza parlor and exited again. Domuret yelled "stop, police." The gunman crouched behind a car, stood up and fired the shotgun. Phillippo was struck and fell; blood "poured" from his head, ears and chest. The gunman ran some 15 feet and fired again. No one was hit. Domuret fired a shot at the gunman. The gunman fired again. Domuret then went to Phillippo's aid.

After Phillippo was taken to the hospital, Domuret went to the pizza parlor, questioned the patrons and searched them for weapons. He found four spent shells in front of the pizza parlor.

Police officer Robert Peron testified that on the night in question he observed a black male move across the roof of a building in the vicinity of the incident. He identified defendant as that person. Defendant was sitting on the roof, dangling his feet over the side of the building. He was not wearing shoes or socks. When ordered to come down, he slid down the chain of a sign on the building and then dropped.approximately 12 feet to the ground. He was arrested.

Robert Reese, a mobile lab technician with the police department, testified that he was given some shotgun shells at the scene of the crime for analysis. From the roof of a building adjoining the one where defendant was discovered, he recovered a sawed-off shotgun with a live round in it.

Officer Lomoro of the Chicago Crime Lab division testified that he examined the shotgun and shells recovered and determined that two of the shells positively were fired from the recovered shotgun. He could not make a positive identification of the remaining shells.

Officer Phillippo testified regarding his hospitalization, treatment and therapy.

For the defendant, Carol Jackson testified that in 1981 she was placed on court supervision for solicitation for prostitution. She understood that her supervision could be revoked and she could be jailed if she was charged with other offenses while on supervision. On cross-

examination she stated she had not been threatened by the State or coerced to testify.

Leroy Peters testified that at the time of the shooting, defendant and his girl friend had been living at Peters' apartment for about three months. In May of 1981 defendant had been having trouble with his girl friend and began drinking. On the day before the shooting, Peters, defendant and defendant's girl friend were drinking heavily. At about 2 a.m. (approximately 24 hours before the shooting) Peters had ordered defendant out of his home. Defendant left and, according to Peters, was "lit, he was pretty high" and "drunk" at the time.

David Moriarity, an investigator for the public defender's office, testified that he had spoken to Carol Jackson about this incident, and she had told him defendant was "crazy, not rational" and "ranting and raving" while at the pizza parlor.

After closing arguments, the jury returned the aforementioned guilty verdicts.

■ Defendant contends the trial court erred in admitting into evidence Officer Phillippo's bloody clothing and his testimony regarding the nature and extent of the injuries he suffered, the resulting medical treatment and the therapy he received for them. Defendant alleges this evidence was highly prejudicial and inflammatory as well as immaterial to any issue presented. We disagree.

Defendant was charged, *inter alia*, with aggravated battery. One element of that charge is that the accused "*** causes great bodily harm, or permanent disability or disfigurement ***." (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a).) In prosecutions for aggravated battery, proof of the injury inflicted is an "essential element" of the case. *People v. Nard* (1975), 32 Ill. App. 3d 634, 335 N.E.2d 790. See also *People v. Hearan* (1976), 37 Ill. App. 3d 206, 345 N.E.2d 733.

It is recognized that if evidence is relevant and otherwise admissible, it will not be excluded even where it may be prejudicial. (*People v. Calderon* (1981), 98 Ill. App. 3d 657, 424 N.E.2d 671.) A trial court is granted wide discretion in determining whether the probative value of gruesome or inflammatory evidence outweighs its potentially prejudicial effect. (*People v. Outlaw* (1979), 75 Ill. App. 3d 626, 394 N.E.2d 541.) The evidence here complained of was relevant to the crime charged. We find the court did not err in admitting into evidence the officer's clothing nor his testimony regarding his injuries and treatment.

■ Defendant next urges that he was not proven guilty beyond a reasonable doubt of attempted murder, armed violence or aggravated battery because due to his intoxication he did not possess the intent

required for these offenses.

With regard to the aggravated battery charges and the armed violence charge predicated thereon, the State was required to prove that defendant acted "intentionally or knowingly." (Ill. Rev. Stat. 1981, ch. 38, pars. 12—3, 12—4, 33A—2.) As to the attempt murder charges and the armed violence counts predicated thereon, the State was required to prove defendant "*** intends to kill or do great bodily harm *** or knows that such acts will cause death ***." Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(1), 33A—2.

Voluntary intoxication is a defense to specific intent crimes; in order to raise this defense, however, the accused must show "that his intoxication was so extreme as to suspend all reason." (*People v. Moon* (1982), 107 Ill. App. 3d 568, 572, 437 N.E.2d 823.) Merely being drunk is insufficient to create a defense of intoxication. *People v. Williams* (1973), 14 Ill. App. 3d 789, 303 N.E.2d 585.

Here, the only evidence of defendant's drinking was testimony that he had been drinking heavily some 25 hours before the shooting. On the other hand, the State's witnesses testified that the defendant demonstrated physical dexterity including aiming a gun, ducking behind cars, running, climbing and sliding down to the street from a rooftop.

The jury was properly instructed regarding the intoxication defense. It is within the jury's province to determine whether defendant was so intoxicated as to be incapable of forming the requisite intent. Their rejection of this defense was not against the manifest weight of the evidence and should not be reversed. *People v. Gross* (1977), 52 Ill. App. 3d 765, 367 N.E.2d 1028.

■ Defendant next contends that he was denied the effective assistance of counsel because his counsel allegedly (1) failed to call several possible witnesses in support of the intoxication defense and (2) "abdicated" defendant's position and "admitted" his guilt during closing argument.

Defendant asserts that the record indicates the presence of several persons in the pizza parlor and that those persons, if called as witnesses, would have testified to defendant's bizarre behavior, thus supporting his intoxication defense. Defendant argues the failure to call these witnesses demonstrates ineffective assistance of counsel.

While an accused has a right to the effective assistance of counsel (*People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681), he is entitled to competent, not perfect, representation. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63.) Appellate review of a trial coun-

sel's performance does not extend to areas involving the exercise of judgment, trial tactics or strategy, even where appellate counsel, or the reviewing court, might have acted differently. (*People v. Smith* (1980), 81 Ill. App. 3d 764, 410 N.E.2d 1017.) In determining the competency of counsel, the reviewing court will consider the totality of the circumstances. A defendant must show that his counsel was actually incompetent in carrying out his duties as trial attorney, resulting in substantial prejudice to defendant, without which the outcome of the trial would probably have been different. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Defendant may not rely on mere conjecture nor speculate as to the outcome of the case had representation been of a higher quality. *People v. Hills* (1980), 78 Ill. 2d 500, 401 N.E.2d 523.

In the present case the report of a physician appointed to determine defendant's fitness to stand trial and the police reports note the names of three persons, in addition to Ms. Jackson, who were in the pizza parlor at the time of the incident. Apparently the doctor spoke to one of the witnesses, as his report states that the witness reported to the doctor that at the time of the incident defendant appeared "high on something" but that defendant "used common sense and knew what he was doing." The record does not indicate that the other alleged witnesses were interviewed by the doctor. Defendant surmises that these witnesses, if called to testify, would have supported his intoxication defense.

The record does not reveal whether these witnesses were in fact interviewed by defense counsel, whether they were available to testify at trial, whether they were competent to testify and, except for the alleged statements by one witness as previously noted, the substance of their probable testimony.

Which witnesses to call on behalf of a defendant has been recognized as a question of trial strategy which will not render an attorney's representation incompetent. (*People v. Tate* (1981), 94 Ill. App. 3d 192, 418 N.E.2d 1048.) While it is true that the "failure to interview witnesses may indicate actual incompetence [citation] particularly when the witnesses are known to trial counsel and their testimony may be exonerating" (*People v. Greer* (1980), 79 Ill. 2d 103, 123, 412 N.E.2d 203), whether such failure is incompetency "depends upon the value of the evidence which might have been obtained and the closeness of the case [citation]." *People v. Reed* (1979), 84 Ill. App. 3d 1030, 1043, 405 N.E.2d 1065.

■ With regard to the one witness whose purported statements were noted in the doctor's report, his remarks indicate his testimony

would not have assisted defendant's intoxication defense as he indicated defendant "used common sense" and "knew what he was doing." The possible testimony of the other two witnesses is not before us. "We are left to conjecture as to the impact of this omitted evidence, and such conjecture is not a basis for a demonstration of ineffective assistance of counsel *** where defendant fails to indicate the nature of the omitted testimony, he has failed to prove the requisite prejudice resulting from the omission." (*People v. Lewis* (1981), 97 Ill. App. 3d 982, 990, 423 N.E.2d 1157.) Defendant's claim must be rejected.

■ Defendant's second contention regarding ineffective assistance of counsel is that his attorney "abdicated" his intoxication defense and "admitted" defendant's guilt at closing argument. The record shows that during defendant's closing argument, counsel asked the jury to find defendant guilty of the lesser offenses of aggravated battery and unlawful use of weapons, and not guilty of attempt murder and armed violence. Counsel described defendant on the night of the incident as "very drunk" and his crime as "very bizarre" but later conceded she did not "know" if defendant was "drunk" at the time of the incidents.

In assessing the record as a whole, as we must, we cannot say that this single aspect of the closing argument was incompetence and that it so severely prejudiced defendant that without it the outcome of the trial would have been different.

For the reasons herein stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.