THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE W. DAVIS, Defendant-Appellant.

Second District   No. 2—85—0288

Opinion filed December 31, 1986.

436

G. Joseph Weller and Gary S. Rapaport, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Kenneth R. Boyle, William L. Browers, and Virginia M. Ashley, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After a jury trial defendant, George W. Davis, was convicted of residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—3), home invasion (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(1)), and aggravated criminal sexual assault (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(a)(1)), and was sentenced to consecutive terms aggregating 120 years' imprisonment. He appeals, contending the trial court erred in (1) ordering him to repeat the attacker's words for an in-court identification; (2) refusing to submit an instruction relating to the exclusion of all reasonable theories of innocence; (3) failing to appoint new counsel for defendant for a post-trial hearing; (4) imposing consecutive sentences; and (5) finding that defendant's verbal warnings to the victim constituted conduct threatening harm to others.

On October 21, 1984, Janet Gave, who resided with her five children in a house in Waukegan, Illinois, was awakened by a man putting a gloved hand over her mouth and placing one of her kitchen knives to her throat. The man ordered her to remain quiet and to pull her nightgown over her head. He told her not to look at his face or he would kill her and her children. After raping her, the man tied Gave's hands behind her back, threw the blankets over her, and repeated his threat to kill her children if she looked at his face. She noted at this time that his penis was uncircumcised. He left the room after again threatening to return to kill her and her children, and she then observed he was black, wore black pants and black shoes or boots and had an afro hairstyle. The man walked around

the house and then returned and asked Gave where she kept her money. She replied she didn't have any and he again raped her and threatened to kill her children if she looked at his face. After further threats to return to kill Gave and her children, the man left the room, and she heard him exit through the kitchen door. A few moments later, at approximately 1:17 a.m., she called the police.

Gave subsequently determined that her purse, which had contained $4, a video cassette recorder (VCR) with a video tape in it, and her car were missing. The contents of Gave's purse were later found in a dumpster outside defendant's building, but fingerprints removed from the items did not match defendant's fingerprints. Tennis shoes found with the purse matched a footprint lifted from her kitchen floor. She also identified a pair of gloves found in a storage area adjoining defendant's apartment as identical to the gloves worn by the attacker.

At a videotaped pretrial lineup, which included defendant, held on November 9, 1984, the members of the lineup repeated the attacker's words, "Don't look at my face or I will kill you." Gave failed to identify defendant as her attacker. At trial, over defense counsel's objection, the court ordered defendant to repeat the phrase and Gave then stated defendant's voice was the same as the voice of the attacker. Gave testified she had recognized his voice during the lineup, but did not identify him because he limped and had shaved his head.

At trial Jolene Mayfield, who lived with defendant, testified that defendant had told her he was going out "hustling" for money on October 21, 1984, and had returned at approximately 2:30 a.m. the next morning with a video cassette recorder.

Virginia Blow, defendant's neighbor, testified that defendant told her on October 30, 1984, that the police were coming to his apartment and gave her a VCR to keep for him; it was subsequently identified as Janet Gave's video cassette recorder.

Defendant testified that at approximately 1:30 a.m. on October 22, 1984, he went to a nearby store to buy cigarettes and was approached by Jeffrey Garrett, who wished to sell stolen property to defendant's brother-in-law. Defendant purchased a VCR from Garrett and Garrett abandoned a bag containing checks, a purse, and clothes in the storage area adjoining defendant's apartment. Defendant stated he subsequently learned the police were looking for him and therefore stored the VCR with a neighbor, placed the bag left by Garrett in a dumpster, and fled his apartment because he did not want to be arrested in connection with the stolen goods. Defendant

testified he shaved his head and his pubic area several days before his arrest because he suffered from crabs. Defendant did not shave his beard and his penis is uncircumcised.

At the instructions conference, the trial court refused defense counsel's tender of a circumstantial evidence instruction requiring the jury to acquit defendant unless the evidence excluded every reasonable theory of innocence. After deliberations, the jury acquitted defendant of the offense of residential burglary with intent to commit sexual assault and convicted him of the offenses of home invasion, residential burglary, and aggravated criminal sexual assault.

At a hearing on defendant's post-trial motions, defense counsel presented defendant's argument that counsel's representation at trial had been ineffective, which the trial court rejected. At a sentencing hearing held on April 8, 1985, the State presented evidence of other crimes committed by defendant and the court found that the State had proved defendant's guilt of the offenses of home invasion and assault against Laronda Larson. On September 27, 1984, Larson awoke to find a man in her bedroom who wielded a knife and ordered her to remain silent or he would kill her. She screamed and struggled, and the attacker fled. She subsequently discovered that money from her pants pocket and purse, as well as her VCR, were missing. Larson later identified defendant's voice as identical to that of her attacker. After making specific findings as to the existence of aggravating factors, the court sentenced defendant to consecutive, extended-term sentences of 60 years' imprisonment for home invasion and aggravated criminal sexual assault and a concurrent sentence of 15 years' imprisonment for residential burglary. This appeal followed.

■ Defendant contends the trial court erred in ordering him to repeat the words uttered by Gave's attacker for purposes of an in-court voice identification, arguing the probative value of the procedure was substantially outweighed by its prejudicial effect to him. (*People v. Jones* (1982), 94 Ill. 2d 275, 286, 447 N.E.2d 161, *cert. denied* (1983), 464 U.S. 920, 78 L. Ed. 2d 264, 104 S. Ct. 287; *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484, 485 N.E.2d 1292, *appeal denied* (1986), 109 Ill. 2d 29.) In such cases, the trial court is granted wide discretion to weigh the relevance of the evidence against its possible prejudice. (*People v. Stewart* (1984), 122 Ill. App. 3d 546, 549, 461 N.E.2d 591; *People v. Outlaw* (1979), 75 Ill. App. 3d 626, 650, 394 N.E.2d 541, *appeal denied* (1979), 74 Ill. 2d 588.) However, evidence which is otherwise relevant will not be excluded simply because it tends to prejudice the accused. *People v. Wright*

(1986), 140 Ill. App. 3d 576, 579, 488 N.E.2d 1344, *appeal denied* (1986), 112 Ill. 2d 28; *People v. Rachel* (1984), 123 Ill. App. 3d 600, 605, 462 N.E.2d 959, *appeal denied* (1984), 101 Ill. 2d 574.

●2 Here, defendant argues the in-court identification had little probative value inasmuch as Janet Gave had already testified she recognized defendant's voice at the pretrial lineup as the voice of her attacker. Moreover, he argues that the jury could not help but react negatively to defendant's recitation of the threatening words. However, Gave failed to identify defendant as her attacker at the lineup and this failure would undoubtedly have been a source of impeachment under cross-examination by defense counsel. The in-court voice identification was thus not merely cumulative, but was relevant evidence of the identity of her attacker. Any prejudicial effect upon the jury by defendant's mere recitation of the threatening language by order of the court is speculative and does not outweigh the probative value of the identification.

●3 Defendant further argues the in-court voice identification violated his fifth amendment privilege against self-incrimination. This issue is waived by defendant's failure to raise it during trial and in his post-trial motion (*People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742; *People v. Smith* (1985), 139 Ill. App. 3d 21, 27, 486 N.E.2d 1347, *appeal denied* (1986), 111 Ill. 2d 36), but we choose to consider it nonetheless.

Defendant urges this court to adopt the view of dissenting justices of the Supreme Court. In *United States v. Wade* (1967), 388 U.S. 218, 221-23, 18 L. Ed. 2d 1149, 1153-55, 87 S. Ct. 1926, 1929-30, the majority of the court ruled that the compelled display of an identifiable physical characteristic, such as a defendant's voice, for pretrial identification purposes, does not violate the privilege against self-incrimination because the display is not testimonial in nature. Justice Black observed in his dissent:

> "Had Wade been compelled to utter these or any other words in open court, it is plain that he would have been entitled to a new trial because of having been compelled to be a witness against himself." (388 U.S. 218, 245, 18 L. Ed. 2d 1149, 1168, 87 S. Ct. 1926, 1942.)

Similarly, Justice Fortas, who was joined by Chief Justice Warren and Justice Douglas, stated in his dissent:

> "In my view, however, the accused may not be compelled in a lineup to speak the words uttered by the person who committed the crime. I am confident that it could not be compelled in court." (388 U.S. 218, 260, 18 L. Ed. 1149, 1176, 87 S.

Ct. 1926, 1949.)

Also, in *United States v. Dionisio* (1973), 410 U.S. 1, 33, 35 L. Ed. 2d 67, 87-88, 93 S. Ct. 764, 782, Justice Marshall dissented from the court's reaffirmation of *Wade*, stating that the fifth amendment opposes "the notion that the Government can compel a man to cooperate affirmatively in securing incriminating evidence when that evidence could not be obtained without the cooperation of the suspect."

■ However, a majority of the Supreme Court has held in *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, that the privilege against self-incrimination "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, *to write or speak for identification*, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." (Emphasis added.) (384 U.S. 757, 764, 16 L. Ed. 2d 908, 916, 86 S. Ct. 1826, 1832.) Voice exemplars are not testimonial statements within the protection of the fifth amendment privilege; rather, they are noncommunicative physical characteristics which may be compelled by the court. *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826; *People v. Warner* (1984), 121 Ill. App. 3d 322, 325, 459 N.E.2d 1053.

■ Defendant was merely required to offer his voice as an identifying physical characteristic, and we therefore conclude the trial court did not violate his fifth amendment privilege against self-incrimination. Moreover, we consider the fact that the voice exemplar was compelled in front of the jury to be a distinction without a difference and find support for that conclusion in cases from other jurisdictions. See *State v. Reynolds* (1979), 43 Ore. App. 619, 625, 603 P.2d 1223, 1227 (defendant required to repeat words of robber in court); *Lusk v. State* (Fla. App. 1979), 367 So. 2d 1088, 1089 (prosecutor's request that accused speak so witness could identify his voice was not improper); *People v. Sims* (1976), 64 Cal. App. 3d 544, 553, 134 Cal. Rptr. 566, 571 (defendant compelled to repeat phrases of rapist before jury); *People v. Shackelford* (1976), 37 Colo. App. 317, 320-21, 546 P.2d 964, 967-68 (rape victim positively identified voice of defendant in court as her assailant); *State v. Lacoste* (1970), 256 La. 697, 720, 237 So. 2d 871, 879 (defendant ordered to repeat utterance of attacker).

■ Defendant also argues his physical reactions while uttering the statement, such as his emotional tone, his facial expression, and his demeanor, were testimonial in nature and therefore privileged under the fifth amendment. However, the fifth amendment offers no protection against the compelled display of such physical characteris-

tics. See *United States v. Dionisio* (1973), 410 U.S. 1, 5-6, 35 L. Ed. 2d 67, 74-75, 93 S. Ct. 764, 767; *Schmerber v. California* (1966), 384 U.S. 757, 764, 16 L. Ed. 2d 908, 916, 86 S. Ct. 1826, 1832; *People v. Warmack* (1980), 83 Ill. 2d 112, 126, 413 N.E. 2d 1254; *People v. Tomaszek* (1964), 54 Ill. App. 2d 254, 262-63, 204 N.E.2d 30, *cert. denied* (1965), 382 U.S. 827, 15 L. Ed. 2d 72, 86 S. Ct. 62.

■ Defendant next contends the trial court erred in refusing to give the second paragraph of a tendered instruction in the form of Illinois Pattern Jury Instruction, Criminal, No. 3.02 (2d ed. 1981) (hereinafter IPI Criminal 2d), which states:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [(the) (a)] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

It has heretofore been held that the second paragraph of the instruction should be given where the evidence in a case is entirely circumstantial. (*People v. Crow* (1985), 108 Ill. 2d 520, 536, 485 N.E.2d 381.) However, our supreme court has recently declared that the second paragraph of IPI Criminal 2d No. 3.02 is obscure and misleading and has determined that it should no longer be used. (*People v. Bryant* (1986), 113 Ill. 2d 497, 511-12, 499 N.E.2d 413, 419-20.) We need not, therefore, consider this issue further.

■ Defendant next contends the trial court erred in denying his claim of ineffective assistance of counsel without appointing new counsel to represent him for presentation of the issue. At a hearing of the post-trial motions, defendant's trial counsel presented a list prepared by defendant of specific instances of counsel's alleged inadequate representation at trial. Defendant requests that we remand the cause for a new post-trial hearing on the issue of trial counsel's effectiveness.

The courts have held, and defendant agrees, that there is no *per se* rule that the trial court must appoint new counsel to represent a defendant on his claim of ineffective assistance of trial counsel. (*People v. Mallette* (1985), 131 Ill. App. 3d 67, 75, 475 N.E.2d 237; *People v. Jackson* (1985), 131 Ill. App. 3d 128, 138-39, 474 N.E.2d 466, *appeal denied* (1985), 106 Ill. 2d 557.) This is particularly true where, as here, defendant did not made a request for the appoint-

ment of new counsel. Nor does a *per se* conflict of interest exist merely because a defense attorney's competence is questioned by his client during post-trial proceedings; rather, the underlying allegations of incompetence determine whether an actual conflict of interest exists. (*People v. Dixon* (1985), 133 Ill. App. 3d 450, 452, 478 N.E.2d 909, *appeal denied* (1985), 107 Ill. 2d 44; *People v. Jackson* (1985), 131 Ill. App. 3d 128, 138-39, 474 N.E.2d 466, *appeal denied* (1985), 106 Ill. 2d 557; *People v. Johnson* (1981), 98 Ill. App. 3d 228, 231-32, 424 N.E.2d 610.) To prove a charge of ineffective assistance of counsel, a defendant must establish not only that his attorney was incompetent, but that his incompetence was prejudicial to the outcome of the case. (*People v. Harris* (1985), 105 Ill. 2d 290, 304, 473 N.E.2d 1291; *People v. Stewart* (1984), 122 Ill. App. 3d 546, 551, 461 N.E.2d 591; *People v. Johnson* (1981), 98 Ill. App. 3d 228, 231-32 424 N.E.2d 610.) Errors in judgment or trial strategy do not establish incompetency (*People v. Jackson* (1985), 131 Ill. App. 3d 128, 139, 474 N.E.2d 466; *People v. Benka* (1983), 117 Ill. App. 3d 221, 225, 453 N.E.2d 71, *appeal dismissed* (1983), 96 Ill. 2d 561; *People v. Martin* (1983), 112 Ill. App. 3d 486, 494, 445 N.E.2d 795, *appeal denied* (1984), 99 Ill. 2d 533), and the issue of incompetency is determined by the totality of counsel's conduct (*People v. Stewart* (1984), 101 Ill. 2d 470, 493, 463 N.E.2d 677, *cert. denied* (1984), 469 U.S. 920, 83 L. Ed. 2d 237, 105 S. Ct. 303; *People v. Robinson* (1984), 121 Ill. App. 3d 1003, 1008, 460 N.E.2d 392; *People v. Shepard* (1983), 114 Ill. App. 3d 598, 603, 449 N.E.2d 222). The competency of counsel is presumed, and the presumption can only be overcome by strong and convincing proof. *People v. Stewart* (1984), 101 Ill. 2d 470, 492, 463 N.E.2d 677, *cert. denied* (1984), 469 U.S. 920, 83 L. Ed. 2d 237, 105 S. Ct. 303; *People v. McCraven* (1981), 97 Ill. App. 3d 1075, 1077, 424 N.E.2d 23.

Here, defendant argues that his trial counsel was incompetent because he failed to find Jeffrey Garrett's phone number in defendant's personal possessions; failed to cross-examine witnesses more extensively concerning the type of tennis shoes defendant wore; failed to move to suppress the video recorder and the items found in defendant's garbage; and failed to argue that defendant is naturally bald, that the order for a lineup was invalid because it was stamped with the judge's signature rather than signed, that defendant was denied his constitutional right to have an attorney present when hair samples were taken from him at the jail, and that double jeopardy barred defendant's indictment because there was a finding of no probable cause at his preliminary hearing.

■ We need not address these arguments separately. A review of the record reveals that defendant's arguments either lack merit, address matters of judgment or trial strategy, or do not constitute strong and convincing proof of incompetency on the part of defense counsel when considered within the totality of counsel's conduct during trial, which the trial judge characterized as outstanding. Accordingly, we conclude the trial judge did not err in failing to appoint new counsel for presentation of defendant's post-trial motions.

■ Defendant next contends the trial court erred in finding that his offense of home invasion involved a substantially different criminal objective than his offense of aggravated criminal sexual assault and that the imposition of consecutive sentences was not justified pursuant to section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(a)). The test to determine whether particular offenses are part of a single course of conduct, during which there was no substantial change in the nature of the criminal objective, is the independent-motivation test. That is, all of the surrounding facts must be appraised objectively to determine which acts were independently motivated and which were merely part of an independently motivated course of conduct. (*People v. Miller* (1983), 115 Ill. App. 3d 592, 603, 450 N.E.2d 767, *appeal denied* (1983), 96 Ill. 2d 546, *cert. denied* (1984), 465 U.S. 1033, 79 L. Ed. 2d 701, 104 S. Ct. 1302; *People v. Ingram* (1980), 84 Ill. App. 3d 495, 501, 405 N.E.2d 864, *appeal denied* (1980), 81 Ill. 2d 596.) We note that although this test has been rejected as a standard for establishing the validity of multiple convictions and concurrent sentences, it remains a relevant test for determining whether consecutive sentences may be imposed. *People v. King* (1977), 66 Ill. 2d 551, 565-66, 363 N.E.2d 838; *People v. Miller* (1983), 115 Ill. App. 3d 592, 603, 450 N.E.2d 767, *appeal denied* (1983), 96 Ill. 2d 546, *cert. denied* (1984), 465 U.S. 1033, 79 L. Ed. 2d 701, 104 S. Ct. 1302.

Defendant argues that the evidence, including testimony by Laronda Larson concerning a similar attack on her by defendant, shows that at least one of his objectives in entering Janet Gave's home was sexual assault and, therefore, his offenses of home invasion and residential burglary did not involve a substantially different objective than his offense of aggravated criminal sexual assault. He notes that in *People v. Morgan* (1976), 44 Ill. App. 3d 459, 358 N.E.2d 280, *appeal denied* (1976), 64 Ill. 2d 597, the court found that the evidence did not support the trial judge's finding that the accused entered a building to commit a theft, became angry, and then formed the substantially different objective of burning the build-

ing. The appellate court stated "[i]t is possible that the defendant entered the cleaners that night with the intent to commit a theft *and* burn the building." (Emphasis in original.) (44 Ill. App. 3d 459, 467, 358 N.E.2d 280.) Similarly, defendant argues there is no evidence here to support the trial judge's determination that defendant did not form the intent to commit sexual assault until after he had entered Janet Gave's home.

The State contends that the evidence, including testimony by Jolene Mayfield that defendant told her on the evening of October 21, 1984, that he was going out to "hustle," the fact that Gave's purse, which was located on the kitchen counter, contained only $4, and that defendant proceeded from the kitchen to Gave's bedroom, shows defendant did not form the intention to rape Gave until he had entered her home. Moreover, the State argues that Laronda Larson was not sexually attacked and would not have been disturbed if she had not awoken.

We agree with defendant that there is nothing in the record to support the trial court's finding that defendant's sole objective in entering Gave's home was burglary and that he formed the intent to sexually assault Gave only after he entered her home. It is equally possible under this evidence that defendant entered Gave's home with the intent to commit both a theft and a sexual assault. We conclude the trial court erred in imposing consecutive sentences. See *People v. Baker* (1985), 133 Ill. App. 3d 620, 622-23, 479 N.E.2d 372, *appeal denied* (1986), 108 Ill. 2d 43.

In his final contention, defendant states the trial court improperly found that his verbal warnings to Gave constituted conduct which threatened harm to her and her children and that a new sentencing hearing is therefore required. Section 5—5—3.1(a)(1) of the Unified Code of Corrections lists as a factor in mitigation that "the defendant's conduct neither caused nor threatened serious physical harm to another." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.1(a)(1).) Section 5—5—3.2(a)(1) of the Code lists as an aggravating factor that "the defendant's conduct caused or threatened physical harm." The trial court determined in its findings of factors in aggravation and mitigation that defendant's conduct threatened serious physical harm to Gave and her children. Defendant argues that "conduct" within the meaning of these statutes refers only to physical actions, not to verbal warnings such as the threats to kill in this case.

Section 2—4 of the Criminal Code of 1961 (Code) defines conduct as "an act or a series of acts, and the accompanying mental state."

(Ill. Rev. Stat. 1983, ch. 38, par. 2—4.) We note that the offense of disorderly conduct (Ill. Rev. Stat. 1983, ch. 38, par. 26—1) may not be committed by engaging exclusively in verbal activity, and that the Code defines and proscribes a variety of acts which may consist solely of verbal conduct (Ill. Rev. Stat. 1985, ch. 38, par. 8—1 (solicitation); Ill. Rev. Stat. 1985, ch. 38, par. 8—2 (conspiracy); Ill. Rev. Stat. 1985, ch. 38, par. 12—1 (assault); Ill. Rev. Stat. 1985, ch. 38, par. 12—6 (intimidation); Ill. Rev. Stat. 1985, ch. 38, par. 17—2 (impersonation); Ill. Rev. Stat. 1985, ch. 38, par. 29A—1 (offering a bribe); Ill. Rev. Stat. 1985, ch. 38, par. 32—2 (perjury)). We conclude that verbal threats may constitute conduct causing or threatening serious harm within the meaning of sections 5—5—3.1(a)(1) and 5—5—3.2(a)(1) of the Unified Code of Corrections.

Accordingly, the judgment of the circuit court is affirmed, as modified, with the sentences imposed to run concurrently rather than consecutively. The mittimus to be corrected accordingly.

Affirmed as modified.

HOPF and WOODWARD, JJ., concur.