THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC ABRAMS, Defendant-Appellant.

First District (6th Division)   No. 1—87—3646

Opinion filed October 12, 1990.

Randolph N. Stone, Public Defender, of Chicago (Thomas M. Donnelly, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Jane E. Loeb, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

Following his plea of guilty to the offenses of aggravated criminal sexual assault and residential burglary, the defendant Eric Abrams was sentenced to consecutive sentences of 25 years for the sexual assault and 5 years for the burglary. The defendant unsuccessfully attempted to have the trial court reduce the 25-year sentence and to set concurrent sentences. He contends that the sentences were improper and that the court incorrectly considered the victim-impact statement during sentencing.

The stipulated facts are as follows: On the evening of August 24, 1986, the complainant was in her Chicago apartment located on West Chestnut Street where she lived with her roommate. Because she was alone that evening, the complainant checked the windows and doors within her apartment and determined that they were all locked except

for her roommate's bedroom window, which was slightly open due to the hot weather. That window, however, was secured by burglar bars. Sometime before 12:30 a.m., the complainant heard noises. She again checked the windows and doors and noticed that the burglar bars were still intact.

About 1 a.m. the complainant awoke when she felt the defendant touching her. Although she began to struggle, the defendant put his hands around her neck, started to choke her, and she began to lose her breath. He said that he was going to kill her. When the defendant lifted one of his hands, the complainant struggled free; the defendant followed her into the hallway, where he hit her in the stomach and neck, causing her to hit her head against a wall. The blow to her stomach doubled her over. The defendant then forced her back into her bedroom, where he first threw her to the floor and then pushed her onto the bed and forced her to submit to vaginal intercourse. She then began to scream, and the defendant fled through the back door of the apartment.

After calling the police, the complainant noticed that the burglar bars had been pried loose. It was determined that the defendant had taken jewelry and stationary cards from her roommate's bedroom. The police later recovered the jewelry from the defendant's girlfriend, Renee Jones. The defendant's fingerprints were recovered from a picture frame in the roommate's bedroom.

The complainant was examined at a nearby hospital. She had injuries on her face and lips. A vaginal swab taken from the complainant tested positive for the presence of semen.

The defendant was arrested eight days later when a resident who lived in the building next door to the complainant became suspicious of the defendant, whom he saw walking around the property, and called the police.

The defendant read and signed a statement summarizing his conversation with an assistant State's Attorney. The defendant stated that he broke the burglar bars in front of a bedroom window and entered. He turned on a television set and looked for jewelry in a jewelry box. After he took some jewelry, he walked down the hallway "to check the rest of the apartment." He entered another bedroom where he saw a woman sleeping. He went over to the woman and began squeezing her neck when she "hollered." The woman jumped up and the covers came off her. He saw that she had no clothes on; he took off his clothes while he was holding her neck. The woman tried to run, but he pulled her back into the bed. He forced her to have sexual intercourse with him. After talking with her, he left the apartment. He

later gave the jewelry he had taken to his girlfriend, Renee Jones, and told the police how to locate her.

Before the sentencing, the State filed a victim-impact statement in which the complainant said that she had lost her voice for a week as a result of the defendant choking her. She also sustained a cut lip which caused her mouth to become infected, thereby requiring that dental fillings be removed and her teeth refilled. In addition, because she could not live in her apartment, her parents came to Chicago from out of town to stay with her while she looked for a new place to live. Further, she had trouble sleeping after the incident. She missed work and sought professional help. She feared for her life during the incident, and she wanted the defendant to receive the maximum sentence. After hearing evidence in mitigation, including the testimony of the defendant, the judge imposed consecutive sentences.

■■ ■ Section 5—8—4(a) of the Unified Code of Corrections provides that a court shall not impose consecutive sentences for offenses which a defendant committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless the defendant was convicted of a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court shall impose consecutive sentences. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(a).) Under section 5—8—4(b), a court shall also refrain from imposing consecutive sentences unless, having regard for the nature and circumstances of the offense and the character and history of the defendant, it is of the opinion that such a term is necessary to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b).) In imposing consecutive sentences, the judge found that the theft of the jewelry and the rape were two separate acts.

Reduced to a syllogism, the defendant's position may be summarized: Under the law, if the record shows that it was possible that the defendant entered the complainant's apartment with the intent to commit theft *and* rape, consecutive sentences may not be imposed. Under this record, it was possible that the defendant entered the apartment with the intent to commit theft *and* rape. Therefore, the consecutive sentences were improper. We would agree with the defendant's logic, if we accepted the first premise. We cannot accept it.

The defendant relies principally on *People v. Davis* (1986), 151 Ill. App. 3d 435, 502 N.E.2d 780. In *Davis*, the complainant was awakened by a man who put a hand over her mouth and a knife to her throat. He told her not to look at him or he would kill her children.

After raping her, he tied her hands behind her back, left the room and walked around the house. He returned and asked where her money was. After she said she did not have any, he raped her again. After he left the house she determined that her purse containing $4, a video cassette recorder and her car were missing. The video cassette recorder was recovered from a woman who testified the defendant had given it to her. The complainant identified the defendant by his voice. The defendant was convicted of residential burglary, home invasion and aggravated criminal sexual assault.

At the sentencing hearing, another woman testified that less than one month before the rape for which the defendant was convicted, he wakened her in her bedroom. He wielded a knife and ordered her to remain silent or he would kill her. She screamed and struggled, and the defendant fled. She subsequently discovered that money from her pants pocket and purse, as well as her video cassette recorder, were missing. The court then imposed consecutive, extended-term sentences for the home invasion and aggravated criminal sexual assault.

The appellate court held that the imposition of consecutive sentences was error, stating as follows:

> "We agree with defendant that there is nothing in the record to support the trial court's finding that defendant's sole objective in entering [the complainant's] home was burglary and that he formed the intent to sexually assault [the complainant] only after he entered her home. It is equally possible under this evidence that defendant entered [the complainant's] home with the intent to commit both a theft and a sexual assault. We conclude the trial court erred in imposing consecutive sentences. [Citation.]" 151 Ill. App. 3d at 445.

We conclude from the *Davis* opinion that its emphasis on what was "equally possible" arises from its reliance on *People v. Morgan* (1976), 44 Ill. App. 3d 459, 358 N.E.2d 280. In *Morgan*, the defendant was convicted of burglary and arson and given consecutive sentences. The evidence consisted of the defendant's fingerprint found on a piece of glass at the scene and his implied admission. A witness testified that she asked the defendant what his purpose was in setting the fire, and he answered, "How do you know I did it?" She told him that his brother had told her. His brother then told the defendant he might as well "own up to it because [the woman] knew it." The defendant "just sort of laughed and shrugged it off." (44 Ill. App. 3d at 462.) At the time of sentencing the judge said the following to the defendant:

> "You went in there to steal, became mad and you decided to burn it. So considering [the section of the Code authorizing con-

secutive sentences] the court finds that there was a substantial change in the nature of the criminal objective and therefore that a consecutive sentence should be granted." 44 Ill. App. 3d at 467.

The appellate court noted that there was nothing in the record upon which the trial judge could base such a finding. It added:

"It is possible that the defendant entered the [building that was burned] that night with the intent to commit a theft *and* burn the building. This possibility, however, is not evidenced in the record anymore than is the suggestion by the State that a change in the defendant's intent and objective took place once he failed to open the safe.

\*\*\*

\*\*\* It is plausible that burning the building was part of defendant's whole scheme. The record fails to disclose sufficient facts upon which to base an inference one way or the other. The judge must limit himself to the evidence adduced of record when imposing sentences. [Citations.]

An objective reading of the record fails to reveal anything to support the trial judge's finding 'that there was a substantial change in the nature of the criminal objective.' Therefore, there is no basis for the court's decision to impose consecutive sentences." (Emphasis in original.) (44 Ill. App. 3d at 467.)

The *Davis* court relied on the appellate court language in *Morgan* that it was " 'possible that the defendant entered the [building that was burned] that night with the intent to commit a theft *and* burn the building.' (Emphasis in original.)" *Davis*, 151 Ill. App. 3d at 445, quoting *Morgan*, 44 Ill. App. 3d at 467.

■ We do not believe that *Morgan* is support for so broad a rule that in determining the propriety of consecutive sentences a court is barred from imposing a consecutive sentence if there is any "possibility" that the criminal acts did not manifest a substantial change in the nature of the criminal objective. There is *no* evidence recited in the *Morgan* opinion to support any finding of an intent to steal. We assume from the State's argument in that case that there was some evidence of an *unopened* safe. The court said that the record failed to disclose sufficient facts upon which to base an inference one way or another. (44 Ill. App. 3d at 467.) We agree with that observation of the court. However, that observation is not applicable in this case. Here, the defendant took property from an empty bedroom. He was unaware of the presence of the complainant until he saw her in the bedroom after he left her roommate's bedroom, in his words, to "check the rest

of the apartment." When the woman jumped up and the covers came off her, he saw that she was nude. He then took his clothes off and raped her. In our judgment, the record did disclose sufficient facts upon which to base an inference that the intent to rape came after the defendant had stolen the property and thus supported the trial judge's finding that there was a substantial change in the nature of the criminal objective.

Our rejection of the defendant's argument is supported by the supreme court's holding in *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819. The defendant and another man forced their way into the home of the victims, husband and wife. A scuffle ensued, and the husband, who was carrying an unloaded revolver, was shot and killed. The two men then entered the wife's bedroom and tied her up. They left the home after taking money and other property. The defendant was convicted of burglary, armed robbery and murder, and the court ordered the sentence for murder to be served consecutively to the sentences for burglary and armed robbery. In upholding consecutive sentences for robbery and murder, the supreme court held that the purpose of the entry was robbery, not murder, and that the criminal objective "shifted, at least partially," to murder when the robbers confronted the husband with a gun. (60 Ill. 2d at 15.) We believe that under the facts of *Williams* it was *possible* that when the defendant entered the home with a gun he intended to kill someone. Implicitly, in our judgment, the supreme court has rejected the defendant's argument.

The standard of proof urged upon us by the defendant is unknown to the law. Even conviction of a criminal offense does not require proof to such a degree. It is significant that in *Morgan,* relied on by the defendant, the court discussed the burden of proof for conviction in a circumstantial evidence case. It concluded that the "defendant's guilt need not be proved beyond *any possibility of a doubt"* (emphasis added) (*Morgan,* 44 Ill. App. 3d at 465); and that a "jury is not required to search for a series of *possible explanations* compatible with innocence to elevate them to the status of reasonable doubt. [Citation.]" (Emphasis added.) 44 Ill. App. 3d at 466.

We also note that in sentencing a court need not be satisfied of the existence of aggravating circumstances beyond a reasonable doubt. (*People v. Perez* (1981), 101 Ill. App. 3d 64, 427 N.E.2d 820.) We see no reason why the same standard of proof should not apply to the factual determination by a trial judge of whether multiple criminal acts support the imposition of consecutive sentences. On review, the trial judge's determination should not be gainsaid unless a reviewing court

can say that the trial judge's decision was manifestly erroneous. In this case, we believe that the evidence supports the trial judge's finding and that the finding was not manifestly erroneous.

We have already expressed the view that *Morgan*, relied on by *Davis*, does not support the rule suggested by the defendant. In addition, we cannot be certain that the *Davis* court intended to express such a rule, and we prefer to restrict *Davis* to its facts. If the *Davis* opinion is to be read as the defendant suggests, we must respectfully express disagreement with it.

■■ The defendant next contends that his sentences were excessive because he was a first-time offender, he had a good school performance record, a supportive family, he was 15 years old at the time of the occurrence and he was contrite about having attacked the victim. We have examined the remarks of the trial judge before sentencing and are convinced that he considered all factors required by the law, including all of the evidence in mitigation. (See *People v. Plantinga* (1985), 132 Ill. App. 3d 512, 477 N.E.2d 1299.) The crime itself, invading a woman's home and raping her, is extremely heinous. Add to that the facts that the defendant choked her to the point she could not breathe, struck her in the stomach and face causing lacerations to her lip and repeatedly threatened to kill her. In our judgment, the record supports the judge's exercise of discretion, and we would be usurping his function if we were to reduce the sentence. See *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.

■■ The defendant's last contention is that the court erred for a number of reasons in considering the complainant's victim-impact statement. First he maintains that consideration of the statement violates article I, section 11, of the Illinois Constitution. (Ill. Const. 1970, art. I, §11.) The Constitution provides that when determining the sentence to be imposed upon a defendant, the court must consider both the seriousness of the offense and the possibility of restoring the defendant to useful citizenship. The defendant argues that because those factors do not specifically include consideration of the crime's effect on the victim, such consideration is barred under the Illinois Constitution. We do not agree. It is obvious that the victim-impact statement illustrates and elaborates upon the seriousness of the defendant's crime which, in turn, includes its effect upon the complainant. It reasonably follows, therefore, that consideration of the victim-impact statement is not barred under the Illinois Constitution.

■■ ■ The defendant further contends that the victim-impact statement was inadmissible because he was denied the right to cross-examine the complainant. Although the victim-impact evidence is inad-

missible in capital cases, such a rule does not apply to a noncapital sentencing hearing where facts about the victim may prove to be relevant. (*People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196.) Pursuant to the reasoning of *Turner*, the complainant's statement was admissible. Her statement was also admissible under the statutory requirement. Specifically, the statute provides that victims of violent crimes have the opportunity to prepare, as evidence in aggravation and mitigation, a written statement regarding how the crime has affected their lives. Such a statement must be prepared in conjunction with the State's Attorney before it *may* be presented orally at the hearing. Any sworn testimony which the victim offers is subject to the defendant's right to cross-examine. (Ill. Rev. Stat. 1985 ch. 38, par. 1005—4—1(a)(6).) Under the plain meaning of the statute, the oral presentation of the victim's statement is permissive rather than mandatory. (*Cf. People v. Felella* (1989), 131 Ill. 2d 525, 546 N.E.2d 492.) Because the complainant's statement was presented only as a written statement, it did not constitute sworn testimony within the purview of the statute, and thus the complainant was not necessarily subject to cross-examination.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and RAKOWSKI, J., concur.