THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DOROTHY MORRIS, Defendant-Appellant.

Second District   No. 2—90—1404

Opinion filed November 10, 1992.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Dorothy Morris, was found guilty by a jury of first-degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)) and one count of attempted murder (Ill. Rev. Stat. 1989, ch. 38, par. 8—4(a)). The circuit court of Winnebago County sentenced defendant to a 20-year term of incarceration for murder, followed by a 10-year consecutive sentence for attempted murder.

On appeal, defendant argues that (1) the judge tendered incorrect instructions on a special verdict of guilty but mentally ill, (2) the court abused its discretion in sentencing defendant to consecutive terms of imprisonment, and (3) the statutory scheme for first-degree and second-degree murder is unconstitutional. We vacate the judgment in part and remand the cause for resentencing.

On February 2, 1990, defendant began a search for her husband, Peanut, who did not return from work that evening. Proceeding to an area of town which she considered dangerous, defendant carried a gun on her person. From her automobile, defendant eventually spotted Peanut as he left a local tavern with another woman, Amelia Woods. Aware that he was being followed, Peanut stopped his vehicle and told defendant to cease following him. Defendant then returned home. The following morning, accompanied by a friend, defendant located Peanut's vehicle and identified the house in which he was present. After gaining entrance to the house, defendant claims that she observed her husband and Woods engaging in sexual intercourse. Contrary to defendant's claim, Woods denied that she and Peanut were having sexual intercourse when defendant arrived. Peanut stood up and, as he approached defendant, defendant shot him in the head with the gun she carried with

her from the night before. Woods jumped behind a bed. Defendant then proceeded in Woods' direction, pointed the gun downward towards Woods' forehead and said, "Bitch, I am going to kill you too." The gun clicked five times, but did not fire.

Experts at trial explained that the bullets contained in defendant's handgun were meant for a semiautomatic pistol rather than the revolver used by defendant. Specifically, the ammunition used lacked a rim around the base which would have held the cartridge in place. As a result of this error, when the gun was pointed downward, the cartridges slid forward in the chamber, thus preventing the gun from firing.

Defendant first argues that the jury received incorrect instructions on the guilty but mentally ill verdict, which resulted in error requiring a new trial. Before retiring for its deliberations, the court tendered to the jury the following instructions:

"A special verdict of guilty but mentally ill may be returned by you instead of a general verdict of guilty if you find that the *State has proved beyond a reasonable doubt* each of the following propositions to be present in this case:

First: That the defendant is guilty of whichever murder charge you found earlier to be applicable; and

Second: That the defendant was not legally insane at the time she committed that murder; and

Third: *That the defendant was mentally ill at the time she committed that murder.*

If you find from your consideration of all the evidence that each one of these propositions concerning the guilty but mentally ill verdict has been proved beyond a reasonable doubt, you may return the special verdict finding the defendant guilty but mentally ill of the murder charge that you earlier found to be applicable.

*If you find from your consideration of all the evidence that either the second or third proposition concerning the guilty but mentally ill verdict has not been proved beyond a reasonable doubt, you should return the general verdict finding the defendant guilty of the murder charge that you earlier found to be applicable.*" (Emphasis added.)

A similar instruction was given with respect to the charge of attempted murder.

Defendant argues that instructing the jury that it could not return a guilty but mentally ill verdict, unless the State proved mental illness beyond a reasonable doubt, effectively rendered first-de-

gree murder and attempted murder verdicts easier to obtain than the special verdict of guilty but mentally ill. Defendant asserts that the instructions should have made provision for a special guilty but mentally ill verdict under circumstances where the *defendant* proved by a *preponderance of the evidence* that she was mentally ill.

In the present case, without objection by counsel, the trial court tendered jury instructions which were based upon a statute which was inapplicable to the instant criminal action due to the date of the criminal offense. The instructions tendered by the court mirrored the law in effect in 1989 which directed:

> "[T]he court, where warranted by the evidence, shall also provide the jury with a special verdict form of guilty but mentally ill, as to each offense charged and shall separately instruct the jury that a special verdict of guilty but mentally ill may be returned instead of a general verdict, but that such special verdict *requires a unanimous finding by the jury beyond a reasonable doubt* that the defendant committed the acts charged and *that the defendant was not legally insane at the time of the commission of those acts but that he was mentally ill at such time.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 115—4(j).

Defendant correctly asserts that trial court should have tendered an instruction based upon the law in effect as of 1990, which provided, in pertinent part:

> "[A] special verdict of guilty but mentally ill may be returned instead of a general verdict, but that such special verdict requires a unanimous finding by the jury that: (1) the State has proven beyond a reasonable doubt that the defendant is guilty of the offense charged; and (2) the defendant has failed to prove his insanity as required in subsection (b) of Section 3—2 of the Criminal Code of 1961, as amended, and subsections (a), (b) and (e) of Section 6—2 of the Criminal Code of 1961, as amended; and (3) *the defendant has proven by a preponderance of the evidence that he was mentally ill,* as defined in subsections (c) and (d) of Section 6—2 of the Criminal Code of 1961, as amended, at the time of the offense." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 115—4(j).

Although defense counsel acquiesced in the giving of these instructions, we decline to apply the waiver rule on this issue because the plain error rule applies to constitutional errors which may deny a defendant a fair trial. *People v. Buckner* (1991), 220 Ill. App. 3d 468, 473.

Defendant relies upon *People v. Fierer* (1988), 124 Ill. 2d 176, in support of her request for a new trial because of the trial court's misstatement of the quantum of proof necessary to support a guilty but mentally ill verdict. Defendant asserts that the instant trial court's instruction prevents the jury from returning a guilty but mentally ill verdict unless the State proved such mental illness beyond a reasonable doubt. Defendant argues that a proper instruction would have allowed a guilty but mentally ill verdict if defendant had proved mental illness by a preponderance of the evidence. Thus, the erroneous instruction made first-degree murder and attempted murder verdicts easier to obtain than the special verdicts of guilty but mentally ill.

In *Fierer*, the trial court instructed the jury that in order to reach a guilty but mentally ill verdict it had to find defendant sane by a preponderance of the evidence and mentally ill beyond a reasonable doubt. Our supreme court held that this instruction imposed two different burdens for the same proposition. The court explained that the phrase "mental illness" is statutorily defined as a possession of certain thought, mood, or behavioral disorders which do not rise to the level of legal insanity. Thus, the erroneous instructions would essentially put the State in a position where it must prove *noninsanity* beyond a reasonable doubt. In other words, the State would have to prove sanity "by a preponderance of the evidence" as well as "beyond a reasonable doubt."

The basis of the court's reversal was that "[t]he modification of the burden of proof from 'not insane beyond a reasonable doubt' to 'sane by a preponderance of the evidence' had the undeniable effect of making the [guilty but mentally ill] verdict easier to attain and more likely to result [than a not guilty verdict]." (*Fierer*, 124 Ill. 2d at 187.) In essence, the trial court was held to have altered the "beyond a reasonable doubt" language of section 115—4(j) such that the State had fewer hurdles to overcome in order to achieve a guilty but mentally ill verdict. Because defendant in *Fierer* was found guilty but mentally ill at the trial level, our supreme court was then able to determine that such prejudice might have occurred and, therefore, a retrial was justified.

■■ The facts of the present case are distinguishable from those in *Fierer* because the instant instruction rendered the guilty but mentally ill verdict *more difficult* to obtain. Thus, the jury may have been more inclined to render a general verdict of guilt rather than a guilty but mentally ill verdict. In our view, this situation does not require retrial.

The danger the *Fierer* court sought to avoid was one where burdens of proof are misstated with the result that a guilty verdict is made easier to obtain. By modifying the burden of proof from "not insane beyond a reasonable doubt" to "sane by a preponderance of the evidence," the trial court in *Fierer* created a situation where defendant's insanity defense could be more easily defeated.

In the present case, the choice is *not* one between "guilt" and "innocence," but rather one between "guilty" and "guilty but mentally ill." A guilty but mentally ill verdict does not relieve a defendant of criminal responsibility. (*People v. Johnson* (1991), 146 Ill. 2d 109, 131.) A defendant convicted by a guilty but mentally ill verdict is subject to any sentence which could have been imposed upon a defendant who had been convicted of the same offense without a finding of mental illness, including the death penalty. (*Johnson*, 146 Ill. 2d at 131-32; Ill. Rev. Stat. 1989, ch. 38, pars. 6—2(c), 1005—2—6(a).) The principal difference between the two verdicts is that, upon a finding of guilty but mentally ill, the Department of Corrections must "cause periodic inquiry and examination to be made concerning the nature, extent, continuance, and treatment of the defendant's mental illness" and to provide "such psychiatric, psychological, or other counseling and treatment for the defendant as it determines necessary." Ill. Rev. Stat. 1989, ch. 38, par. 1005—2—6(b).

In the present case, the State concedes the presence of evidence sufficient to support a verdict of guilty but mentally ill and would not oppose a modification of the judgment to reflect such a verdict. Therefore, we modify the judgment below to reflect a guilty but mentally ill verdict in accordance with Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)). Our holding in this regard ameliorates any prejudice that may have occurred as a result of defense counsel's failure to tender proper instructions, and, thus, an ineffective assistance of counsel claim cannot be supported.

The State asserts that resentencing is not required because the trial judge fully considered defendant's mental illness at sentencing below. We do not agree. In our view, a new sentencing hearing is necessary to guarantee that the jury's faulty verdicts did not affect the court's sentencing decisions. See *People v. Gurga* (1988), 176 Ill. App. 3d 82.

We next address defendant's assertion that it was error for the trial court to impose consecutive sentences because the murder and murder attempt constituted a single course of conduct. Because of

our holding on the first issue, we address this matter because it will be relevant upon resentencing.

Defendant bases her claim in this regard on section 5—8—4(a), which provides:

> "*The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective,* unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a).

Below, we will highlight a number of cases which apply the "single course of conduct" language used in the statute cited above. While some of these cases are critical of others, we believe they can be reconciled.

In determining whether the defendant's actions constituted a single course of conduct, courts will often examine the motivations behind those actions. For example, in *People v. Stokes* (1988), 172 Ill. App. 3d 534, the defendant was convicted of two counts of armed robbery and one count of attempted murder. The murder attempt involved a shot fired by the defendant as he left the scene of the robbery. The court determined that the armed robbery involved a different criminal objective than did the murder attempt incident to the escape. Therefore, consecutive sentences were properly imposed. Thus, in imposing consecutive sentences, the court in *Stokes* examined the record for the existence of separate and distinct acts and then sought to determine whether separate motivations existed behind those acts. *Stokes*, 172 Ill. App. 3d at 537.

Not all crimes involving multiple acts are deemed to be the result of independent motivations. For example, in *People v. Miller* (1989), 193 Ill. App. 3d 918, the defendant was found guilty of the offenses of voluntary manslaughter of two individuals. The trial court ordered that the sentences for each conviction be served consecutively. However, on appeal, the court modified the consecutive sentence to concurrent sentences. The reason for the court's holding was that the defendant shot both the decedents on the basis of the same motivation, *i.e.*, to protect himself from the decedents' attack. Thus, because there was no change in the defendant's motivation between the simultaneous shootings, no articulable basis could

be found to support a substantial change in the nature of the criminal objective.

Our review of the cases in this area indicates that a finding of independent criminal motivation must be supported by the record. In *People v. Davis* (1986), 151 Ill. App. 3d 435, the court found error in the imposition of consecutive sentences where a paucity of evidence clouded the issue as to whether the defendant intended to commit two crimes in a single course of conduct. Thus, the appellate court determined that there was *no basis in the record to support the trial court's finding* that the defendant's sole objective was to commit a burglary and that the intent to commit sexual assault was found only after the home was entered.

The holding in *Davis* was strongly criticized by *People v. Abrams* (1990), 205 Ill. App. 3d 295. The basis of this criticism rested upon the following language used by the *Davis* court:

> "It is equally possible under this evidence that defendant entered [the victim's] home with the intent to commit both a theft and a sexual assault." (*Davis*, 151 Ill. App. 3d at 445.)

The *Abrams* court determined that this "equally possible" test was not one known to the law. The *Abrams* court argued that a finding that a defendant's action constituted a "single course of conduct" which would prevent the imposition of consecutive sentences is not a finding which is determined by answering the question which asks whether it is "equally possible" that defendant's actions constituted a single course of conduct rather than one which involved a substantial change in the nature of the criminal objective. We respectfully disagree with the *Abrams* court's reading of *Davis*.

In making its determination, the *Davis* court relied upon *People v. Morgan* (1976), 44 Ill. App. 3d 459. In *Morgan*, the court determined that there was nothing in the record which would support a finding that a substantial change in the nature of defendant's criminal objective took place. Therefore, the court rejected the imposition of consecutive sentences by the trial judge. *Morgan*, 44 Ill. App. 3d at 467.

Likewise, the *Davis* court determined that there was nothing in the record to support a finding that defendant's criminal objective changed during the course of the crime. (*Davis*, 151 Ill. App. 3d at 445.) Thus, the *Davis* court properly held that, absent evidence in the record which would support a finding that defendant's criminal objective substantially changed, a consecutive sentence cannot be imposed. Contrary to the *Abrams* court, we do not view the *Davis*

court's comment regarding what was "equally possible" as a statement of a new standard of proof.

The defendant in *Davis* was convicted of the offenses of home invasion, residential burglary, and aggravated criminal sexual assault. The State contended that testimony by a witness asserting defendant's intention to "hustle," the absence of cash in the victim's purse, and defendant's movement from the kitchen to the victim's bedroom show that defendant did not form the intention to rape the victim until he had entered her home. The *Davis* court determined that this evidence was insufficient to support a finding that defendant formed a substantially different criminal objective during the course of the crime.

In *Morgan*, the defendant was found guilty of the offenses of burglary and arson. The State suggested that a consecutive sentence was proper because the defendant's criminal objective changed to arson after he failed to open a safe. The court determined that this mere suggestion, alone, unaccompanied by other facts in the record, would not support a finding that there was a substantial change in the nature of the defendant's criminal objective. *Morgan*, 44 Ill. App. 3d 459.

In *Abrams*, the defendant was convicted of the offenses of aggravated criminal sexual assault and residential burglary. The *Abrams* court determined that there was sufficient evidence to support a finding of a substantial change in the defendant's criminal objective because, by his own admission, he was not aware of the victim's presence while he was committing the burglary. It was only while he was checking the "rest of the apartment" when he took note of the victim and then proceeded to rape her. Thus, contrary to *Davis* and *Morgan*, the record in *Abrams* supported a finding of a changed criminal objective.

In *People v. Miles* (1991), 217 Ill. App. 3d 393, the defendant was convicted of two counts of home invasion, five counts of aggravated criminal sexual assault, one count of criminal sexual assault, one count of aggravated unlawful restraint, and two counts of residential burglary. The crimes committed on the victim in *Miles* took place over many hours during which the victim was sexually assaulted, physically abused, and forced to withdraw funds from her bank account.

Like *Abrams*, the *Miles* court rejected the "equally possible" language used in the *Davis* opinion. At this point we reassert this misapprehension of the *Davis* opinion. *Davis* simply held that there was insufficient evidence of changed criminal objective to support

the imposition of a consecutive sentence. The *Miles* decision is not inconsistent with this view of the *Davis* opinion. The court in *Miles* enunciates the specific facts which support a finding that the defendant's criminal objective substantially changed as the progress of the crime proceeded from robbery to rape. When the defendant's motivation was to obtain money, he threatened to rape the victim if she did not procure the same. Subsequently, defendant's objective changed, and he proceeded to rape the victim in accordance with a new motivation, which did not comport with the terms of his previous threat. Thus, applying the independent motivation test in light of supportive facts which rise to a level beyond that of mere allegation, these opinions can be reconciled.

We determine the imposition of consecutive sentences to have been proper because there is evidence to support a finding by the trial court that the attempted murder of Woods was motivated by a criminal objective which differed from the motivation to murder Peanut. To reiterate, the record supports the trial court's implicit determination that the defendant's objective changed. By this determination, we are not commenting on what sentence should be imposed upon remand.

Finally, defendant asserts that the current Illinois statutory scheme for first-degree and second-degree murder is unconstitutional. We rejected such an argument in *People v. Jerome* (1990), 206 Ill. App. 3d 428, and we see no reason to reverse that decision today.

The judgment of the circuit court of Winnebago County of guilty of murder is vacated; the judgment of guilty of murder but mentally ill is entered; the judgment of guilty of attempted murder is vacated; the judgment of guilty of attempted murder but mentally ill is entered; and the cause is remanded for resentencing on both convictions (guilty of murder but mentally ill and guilty of attempted murder but mentally ill) consistent with this opinion.

Affirmed in part; modified in part; vacated in part and remanded.

INGLIS, P.J., and DUNN, J., concur.