THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDDY MAGNUS, Defendant-Appellant.

First District (2nd Division)   No. 1—92—0852

Opinion filed April 12, 1994.

Rita A. Fry, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his consecutive, extended-term 30-year sentence for second degree murder, raising as issues for review whether the circuit court erred in (1) sentencing him to an extended term; and (2) sentencing him to consecutive terms for first and second degree murder.

On July 3, 1990 at 9:45 p.m., Kimberly Richards and Gerri Gilmore met their respective boyfriends, Garland Darnell Grant and Derrick Lofton, at Bessemer Park on Chicago's south side. The park is located in a neighborhood in which the Latin Kings street gang assert "control." The Latin Kings are part of an umbrella group known as "People." Grant and Lofton belonged to a rival gang, the Disciples, who are associated with a larger group called "Folks." Shortly after meeting, the two couples decided to walk to a restaurant located at 91st and Commercial.

While walking down 90th Street, Grant's hat was turned to the right, signifying his association with the "Folks." As they walked, they twice heard a voice call out "[s]traighten your hat." The speaker, later identified as defendant's brother Ernest, stepped out from the shadow of a tree, said "[y]ou must be Folks," and again ordered Grant

to straighten his hat. Grant removed his hat after Ernest pushed him and when the couples attempted to leave, Ernest blocked their path.

Defendant, who was 16 years old, came out of an alley, approached the group with his hand under his shirt, and asked Ernest if they were "Folks." Ernest then punched Grant in the jaw and when Grant stepped back with his fists raised, defendant pulled a gun from his waistband and fired two shots at him from a distance of 8 to 10 feet. Grant was struck in the back by one of the bullets and collapsed. Defendant then shot Lofton once in the chest and pointed the gun at Gilmore, but fled after she begged for her life. Grant and Lofton were taken to Christ Hospital, where they were pronounced dead.

Defendant testified that when he approached the group, Grant punched his brother in the face. Defendant then saw Lofton "reach for something" and move toward his brother. Fearing for his brother's safety, defendant took out his pistol and shot the victims.

On cross-examination, defendant admitted that he never saw either victim with a weapon. He also testified that he never told an assistant State's Attorney that he heard his brother order Grant to straighten his hat or that he told his brother to "move on them." Prior to closing arguments, the parties stipulated that an assistant State's Attorney would testify that defendant had made those statements.

After a bench trial, the court found defendant guilty of first degree murder for shooting Lofton and imposed a 60-year sentence. The court also found defendant guilty of second degree murder for shooting Grant, imposed an extended-term sentence of 30 years, and ordered consecutive sentences to protect the public from "a dangerous young man." The court reasoned that consecutive sentences were justified because "although the offenses were committed generally as part of a single course of conduct, *** the defendant made a choice separated by at least seconds to fire the gun at two separate individuals." Defendant appeals, challenging the propriety of his sentence.

I

At oral argument, the parties were directed to submit supplemental briefs addressing the issue of whether the circuit court lacked inherent power to impose these sentences. Of particular interest is whether the circuit court was statutorily required to sentence defendant to natural life imprisonment for two murders of differing degrees.

■ Defendant submits that our exploration of this issue is barred by Supreme Court Rule 604 (134 Ill. 2d R. 604), which prohibits the

State from appealing the propriety of his sentence. Where the court orders a lesser sentence than is mandated by statute, however, that sentence is void. (*People v. Wade* (1987), 116 Ill. 2d 1, 6, 506 N.E.2d 954.) A void judgment, order or decree of a court will be reversed on appeal whenever brought before the court by any means possible in the particular case. (*Moffat Coal Co. v. Industrial Comm'n* (1947), 397 Ill. 196, 201, 73 N.E.2d 423.) The duty to vacate a void judgment is based upon the inherent power of the court to expunge from its records void acts of which it has knowledge. (*Irving v. Rodriquez* (1960), 27 Ill. App. 2d 75, 79, 169 N.E.2d 145.) Defendant's argument is without merit since this issue was raised *sua sponte* by the court in fulfillment of our duty to vacate void judgments.

Accordingly, at issue is whether subsection 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(c) (now 730 ILCS 5/5—8—1(a)(1)(c) (West 1992)) (subsection 5—8—1(a)(1)(c))) requires a sentencing court to impose a natural life term when a defendant has been convicted of a first degree as well as a second degree murder. The State posits that the plain language of the statute mandates a life sentence when a defendant is convicted of two murders of either degree. Defendant insists that the legislative history and well-established rules of statutory construction indicate that subsection 5—8—1(a)(1)(c) applies only to subsequent or multiple convictions for first degree murder.

Subsection 5—8—1(a) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a) (now 730 ILCS 5/5—8—1(a) (West 1992))) provides, in pertinent part, as follows:

> "Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
>
> (1) for first degree murder, (a) a term shall be not less than 20 years and not more than 60 years, or (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment, or (c) if the defendant has previously been convicted of first degree murder under any state or federal law or *is found guilty of murdering more than one victim*, the court *shall* sentence the defendant to a term of natural life imprisonment." (Emphasis added.)

When construing a statute, courts must ascertain and give effect to the legislature's intent. (*People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014.) Typically, the statutory language is the best

indicator of legislative intent, and when that language is clear and unambiguous, courts will not read into the statute exceptions, limitations or conditions. (*Goins*, 119 Ill. 2d at 265.) Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses. *Hyatt Corp. v. Sweet* (1992), 230 Ill. App. 3d 423, 429, 594 N.E.2d 1243.

In the instant case, the phrase "murdering more than one victim" in subsection 5—8—1(a)(1)(c) is capable of two reasonable interpretations. The phrase could be narrowly interpreted to apply only to situations involving multiple first degree murders since it is part of the first degree murder sentencing scheme. On the other hand, the plain meaning of the word "murder" includes homicides of either first or second degree. Since the language at issue is ambiguous, we may look to extrinsic aids, including the legislative history of this subsection, in order to resolve the ambiguity. *People v. Winchel* (1987), 159 Ill. App. 3d 892, 921, 512 N.E.2d 1298.

Subsection 5—8—1(a)(1)(c) was added to section 5—8—1 by Public Act 81—1118, effective July 1, 1980. (1979 Ill. Laws 4286-87.) Senator Keats, who sponsored the bill introducing this amendment, stated: "[I]f someone commits a second murder, a mass murder or a multiple murder, those are the only three categories covered, the minimum sentence available is life imprisonment." (81st Ill. Gen. Assem., Senate Proceedings, April 24, 1979, at 29.) At the time subsection 5—8—1(a)(1)(c) was enacted, the only murder provision in effect was section 9—1 of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1 (now 720 ILCS 5/9—1 (West 1992)).) In 1987, section 9—1 was amended and renamed first degree murder while section 9—2, formerly voluntary manslaughter, was retitled second degree murder. (Pub. Act 84—1450, eff. July 1, 1987 (amending Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 9—2, (now 720 ILCS 5/9—1, 9—2 (West 1992))).) As a result, when subsection 5—8—1(a)(1)(c) was enacted, the only applicable murder provision in effect was our current first degree murder statute.

A review of the legislative history surrounding enactment of the amendments establishing first and second degree murder indicates the legislature's intent to maintain the distinctions between the two crimes. Senator Sangmeister stated: "*[W]here there's reference to murder, it's going to be changed to the wording 'first degree murder,' and 'voluntary manslaughter' gets changed to the terminology of 'second degree murder.' And that's really all the amendment does* \*\*\*." (Emphasis added.) (84th Ill. Gen. Assem., Senate Proceedings, May 14, 1985, at 24.) Therefore, the legislative history of Public Act 84—1450 reveals that the legislature intended to change all existing ref-

erences to murder, which included subsection 5—8—1(a)(1)(c), to first degree murder. Accordingly, the language "murdering more than one victim" must be interpreted as mandating a life sentence when defendant is convicted of contemporaneous, multiple first degree murders.

Applying rules of statutory construction leads to a similar conclusion. Rules of interpretation are consulted for the purpose of resolving ambiguities. The entire section and act must be read together and so construed as to make it harmonious and consistent in all its parts. (*People ex rel. Roan v. Wilson* (1950), 405 Ill. 122, 127-28, 90 N.E.2d 224.) In construing a statute where the same, or substantially the same, words or phrases appear in different parts of the same statute, they will be given a consistent meaning, where legislative intent is not clearly expressed to the contrary. *People v. Lutz* (1978), 73 Ill. 2d 204, 212, 383 N.E.2d 171.

■ Here, a consistent construction of subsection 5—8—1(a)(1) mandates that the circuit court impose a natural life sentence only when defendant is found guilty of multiple first degree murders and not two murders of differing degrees. The statute provides sentencing guidelines for first degree murder, and thus, modifies the word "murder" with the term "first degree" in two of three instances. The sole time that the word "murder" is not so modified is in subsection 5—8—1(a)(1)(b), which states, "if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty ***, the court may sentence the defendant to a term of natural life imprisonment." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(b) (now 730 ILCS 5/5—8—1(a)(1)(b) (West 1992)).) The word "murder" in this subsection has been interpreted as being synonymous with "first degree murder." (See *People v. Hartzol* (1991), 222 Ill. App. 3d 631, 584 N.E.2d 291.) A harmonious, consistent construction of the varied forms of the word "murder" appearing in subsection 5—8—1(a)(1) would interpret all of them as "first degree murder."

This conception is also mandated by the rule of statutory construction that ambiguities in penal sentences be resolved in defendant's favor. If a statute creating or increasing a penalty or punishment is capable of two constructions, that which operates in favor of the accused will be adopted. (*People v. Lund* (1943), 382 Ill. 213, 215-16, 46 N.E.2d 929.) A statute authorizing a more severe punishment to be sanctioned upon one convicted of a second or subsequent offense is highly penal, will be strictly construed, and will not be extended in its application to cases which do not, by the strictest construction, come under its provisions. *Lund*, 382 Ill. at 216.

Legislative acts must be construed to produce logical results. (*People v. Jones* (1985), 134 Ill. App. 3d 1048, 481 N.E.2d 726.) Interpreting subsection 5—8—1(a)(1)(c) as mandating a natural life sentence for a first and a second degree murder would produce an absurd result, as the following analysis demonstrates. Subsection 5—8—1(a)(1)(b) grants discretion to a circuit judge to impose a natural life sentence if any of the aggravating factors listed in subsection (b) of section 9—1 of the Criminal Code are present. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(1)(b) (now 730 ILCS 5/5—8—1(a)(1)(b) (West 1992)).) One aggravating factor under subsection (b) is the first degree murder of two or more individuals. (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(b) (now 720 ILCS 5/9—1(b) (West 1992)).) To hold that the legislature intended to grant to the circuit court *discretion* to impose a natural life sentence for multiple first degree murders under subsection 5—8—1(a)(1)(b) while *mandating* the court to impose a life sentence for multiple murders of differing degrees under subsection 5—8—1(a)(1)(c) is an absurd result.

*People v. Winchel* (1987), 159 Ill. App. 3d 892, 512 N.E.2d 1298, analyzed the problem created by subsections 5—8—1(a)(1)(b) and 5—8—1(a)(1)(c) utilizing convictions for multiple murders as criteria for imposing discretionary and mandatory natural life sentences. The court stated that the subsections could be harmonized "if subsection (a)(1)(b) is read as allowing a court to impose a natural life sentence when any aggravating factor listed in section 9—1(b) except multiple murder is present, while (a)(1)(c), which specifically so states, is read as requiring a court to impose the same sentence only where the lone aggravating factor of multiple murder is involved." (*Winchel*, 159 Ill. App. 3d at 923.) Such an interpretation would avoid the absurdity of sentencing a less culpable defendant more harshly under subsection 5—8—1(a)(1)(c) than a more culpable defendant under subsection 5—8—1(a)(1)(b). Further, this construction clarifies the language at issue in subsection 5—8—1(a)(1)(c) because the aggravating factor of multiple murder under subsection 9—1(b) refers to multiple first degree murders.

Therefore, legislative history, statutory rules of construction and logic all dictate that subsection 5—8—1(a)(1)(c) imposes a natural life sentence when defendant has been convicted of two first degree murders and not multiple murders of differing degrees. The circuit court did not err in sentencing defendant.

## II

Defendant argues, and the State concedes, that the extended-term sentence for second degree murder was improper.

■ Subsection 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2(a) (now 730 ILCS 5/5—8—2(a) (West 1992))) provides, in pertinent part, as follows:

"A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present."

The plain language of this subsection requires that, when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may be imposed only for the conviction within the most serious class. *People v. Jordan* (1984), 103 Ill. 2d 192, 205-06, 469 N.E.2d 569.

In the present case, defendant was convicted of first degree murder and the lesser offense of second degree murder. (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1, 9—2 (now 720 ILCS 5/9—1, 9—2 (West 1992)).) Therefore, defendant is ineligible for an extended-term sentence on the second degree murder conviction. Pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we reduce defendant's second degree murder sentence to 15 years, the maximum term permitted by law. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(4) (now 730 ILCS 5/5—8—1(a)(4) (West 1992)).

### III

Defendant next contends that consecutive sentences cannot be imposed for offenses committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. Specifically, defendant claims that the victims were shot without interruption and, therefore, the offenses were committed as part of a single course of conduct. Defendant also argues that the criminal objective to shoot rival gang members never varied during the shootings.

Section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4 (now 730 ILCS 5/5—8—4 (West 1992))) provides, in pertinent part, as follows:

"(a) *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *** in which event the court shall enter sentences to run consecutively. ***

(b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature

and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." In determining whether defendant's actions constituted a single course of conduct, our courts will often examine the motivations behind those actions. (*E.g., People v. Morris* (1992), 237 Ill. App. 3d 140, 146-47, 603 N.E.2d 1196.) A finding of independent criminal motivation must be supported by the record. *Morris*, 237 Ill. App. 3d at 147.

■ In the case *sub judice*, the nature of defendant's criminal objective substantially changed between the time he shot Grant and then turned the gun on Lofton. According to defendant's own testimony, he shot the victims because he believed they were about to harm his brother. The court accepted this version of events as to the first shooting (Grant) and found defendant guilty of second degree murder. The court rejected defendant's testimony with regard to the second killing (Lofton), however, and found him guilty of first degree murder. In so doing, the court accepted the State's witnesses' versions that Lofton was shot while "[h]e just stood there." In assessing differing degrees of culpability, the court implicitly found that defendant's motivation changed between the killings: his motivation in shooting Grant was to protect his brother; his motivation for the unjustified shooting of the passive Lofton was to execute a rival gang member.

Defendant, relying upon *People v. Miller* (1989), 193 Ill. App. 3d 918, 552 N.E.2d 988, maintains that the difference in degree of culpability for the respective shootings does not establish a change in criminal objective. In *Miller*, defendant was charged with two murders, but the circuit court found defendant guilty of two counts of voluntary manslaughter based on an unreasonable belief that the shootings were in self-defense, and ordered consecutive sentences. (*Miller*, 193 Ill. App. 3d at 920.) On appeal, the court found that the imposition of consecutive sentences was improper because the verdicts were an implicit finding by the circuit court that defendant's motivation never varied between the shootings. *Miller*, 193 Ill. App. 3d at 928-30.

*Miller* is distinguishable from the case at bar. In *Miller*, consecutive sentences were improper because defendant shot each victim based on the unreasonable belief that both shootings were justified. In the present case, the court's second degree murder finding was, like *Miller*, an implicit determination that defendant was motivated by perceived necessity. The court found that the second killing was

unjustified, however, by convicting defendant of first degree murder. The disparity in the court's treatment of each shooting is justified by the implicit finding that defendant's motivation changed between the two shootings.

The record supports a finding of independent criminal motivation for each killing. Defendant testified that he acted under a belief that his brother was in danger. The court, as trier of fact, accepted this testimony in regard to the first killing. The record, however, also contains testimony that the shooting was gang-related. In addition, the State's witnesses testified that the second victim was standing passively when he was shot. Finally, the court specifically determined that defendant made a separate choice to shoot the second victim. As a result, the record supports a finding that the first shooting was motivated by perceived necessity while the second was motivated by gang rivalry.

Defendant insists that a substantial change in criminal objective could not have occurred when the shootings were "simultaneous." An analogous case is *People v. Morris* (1992), 237 Ill. App. 3d 140, 603 N.E.2d 1196. In *Morris*, defendant entered a home where she claimed she observed her husband and another woman engaging in sexual intercourse. (*Morris*, 237 Ill. App. 3d at 141.) Defendant killed her husband with a single gunshot to the head, approached his paramour, pulled the trigger five times, but failed to kill her when the gun misfired. (*Morris*, 237 Ill. App. 3d at 141-42.) A jury found defendant guilty of first degree murder as well as attempted murder and the court imposed consecutive sentences. (*Morris*, 237 Ill. App. 3d at 141.) On appeal, the court held that the record was sufficient to support an implicit determination that defendant's objective changed. *Morris*, 237 Ill. App. 3d at 149.

Similarly, in the present case, defendant shot two individuals within a relatively short time span. The record supports the circuit court's implicit determination that defendant's objective changed during this time period. Kimberly Richards testified that after defendant shot Grant, he took the time to turn and shoot Lofton. Moreover, the trier of fact specifically found that "defendant made a choice separated by at least seconds to fire the gun at two separate individuals." Defendant's argument that his criminal objective could not have changed within the brief time period it took to shoot the victims is without merit.

The circuit court did not err in imposing consecutive sentences given the substantial change in defendant's criminal objective and the court's finding that defendant was a danger to the public. *People v. Cooper* (1992), 239 Ill. App. 3d 336, 606 N.E.2d 705 (holding that

the statute requires both that the multiple convictions not arise out of a single course of conduct and that consecutive sentences be necessary to protect the public).

Assuming, *arguendo*, that defendant's criminal objective remained unchanged throughout the shootings, we would still conclude that the circuit court did not err in sentencing him to consecutive sentences. Under subsection 5—8—4(a), consecutive sentencing is proper where defendant has been convicted of a Class X or Class 1 felony and inflicted severe bodily injury. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a) (now 730 ILCS 5/5—8—4(a) (West 1992)).) Here, defendant was convicted of second degree murder, a Class 1 felony (Ill. Rev. Stat. 1991, ch. 38, par. 9—2 (now 720 ILCS 5/9—2 (West 1992))) and inflicted severe bodily injury by murdering Lofton. Therefore, defendant's criminal objective is irrelevant to the propriety of the court's imposition of consecutive sentences because defendant's conviction and conduct during the incident satisfy the statutory exception to the "substantial change" requirement. *People v. Buford* (1988), 178 Ill. App. 3d 329, 338, 533 N.E.2d 472.

For the foregoing reasons, we reduce defendant's extended-term sentence for second degree murder to 15 years to run consecutively to his 60-year first degree murder sentence.

Affirmed as modified.

DiVITO, P.J., and McCORMICK, J., concur.