NO. 4-96-0311

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from

Plaintiff-Appellee, )  Circuit Court of

v. )  Sangamon County

TONY E. SHOULTZ, )  No. 94CF319

Defendant-Appellant. )

)  Honorable

)  Joseph P. Koval,

)  Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial, defendant, Tony E. Shoultz, was con­vict­ed of first degree murder (720 ILCS 5/9-1(a)(1) (West 1994)) and inten­tional homicide of an unborn child (feticide) (720 ILCS 5/9-1.2 (West 1994)) and sentenced to natural life im­pris­on­ment.  Defendant appeals, alleging (1) the feticide stat­ute violates the proportionate penalties clause of the Illi­nois Con­stitution because it imposes greater penalties than does the Illinois Abortion Law of 1975 (Abortion Law) (720 ILCS 510/1 
et
 
seq
. (West 1994)); (2) evidence he had been told the vic­tim was preg­nant was improp­erly admitted hearsay; (3) the court erred in failing to suppress his confession based on his intoxi­cation; and (4) he was improp­erly sentenced to natural life im­prisonment.  We affirm. 

The facts will be referred to only as they deal with the issues on appeal.  On June 9, 1994, the victim, Jennifer Florence, was shot and killed while seated in a motor vehicle at 12th and Jackson Streets in Springfield, Illinois.  

The obstetrician who had examined Jennifer on June 4, 1994, and administered a sonogram on June 6, 1994, stated that the fetus had then been alive and 11 or 12 weeks in ges­ta­tion­al age.  The coroner performing the autop­sy testified that the fetus was in the late third month of the first trimester but was not viable in the sense it could have survived outside the womb.  He also tes­tified that Jennifer sustained three gun­shot wounds, one of which penetrated her heart.

Defendant first argues that because the feticide stat­ute imposes greater penalties for offenses than does the Abortion Law, it violates the proportionate penalties clause of the Illi­nois Constitution (Ill. Const. 1970, art. I, §11).  Defendant contends (1) offenses under the feticide statute and the Abor­tion Law are "identical"; and (2) even if not iden­ti­cal, under cer­tain cir­cum­stances, ex­actly the same criminal act can consti­tute a viola­tion of both statutes.  As to the second con­ten­tion, that the offenses need not be identi­cal, de­fendant cites 
Peo­ple v. Wisslead
, 94 Ill. 2d 190, 446 N.E.2d 512 (1983), a case that is whol­ly distinguish­able.  In 
Wisslead
, the court compared two pred­i­cate of­fens­es carrying unequal penalties, which were dis­proportionately en­hanced by com­mon ag­gra­vat­ing acts, resulting in the ele­vation of the less­er predi­cate of­fense to the grav­er.  
Wisslead
, 94 Ill. 2d at 195-96, 446 N.E.2d at 514-15.

There are in this case no common aggra­vat­ing acts that disproportionately elevate the punishment for any pred­icate of­fens­es.  In addi­tion, de­fen­dant pres­ents a con­torted argu­ment based on a hypo­theti­cal sce­nario of a physi­cian perform­ing an abortion af­fecting a viable fetus and being held crimi­nally lia­ble under both statutes.  Since defendant was not a physician per­forming an abortion on a viable fetus, he lacks stand­ing to raise this claim.

As to defendant's claim that offenses under the feti­cide statute and the Abortion Law are "identical," even a cur­so­ry comparison reveals the fal­lacy of this conclusion.  The feti­cide statute defines the offense as (1) an intent to cause death or great bodi­ly harm to the woman or the fetus, or knowl­edge that acts create a strong proba­bility of death or great bodily harm, and (2) knowl­edge the woman is preg­nant, with an ex­press ex­emp­tion for any acts committed dur­ing an abor­tion.  720 ILCS 5/9-1.2 (West 1994).  Sec­tion 6 of the Abor­tion Law mandates that (1) when a physician per­forming an in­ten­tional abortion judges that there is a reason­able possibility of sus­tained sur­viv­al of a viable fetus, (2) he utilize the abor­tion meth­od most likely to preserve the life and health of the fetus.  720 ILCS 510/6 (West 1994).  The Abortion Law does not penalize abor­tions, but a fail­ure to uti­lize abor­tion methods or medical care most like­ly to preserve the life or health of a via­ble fe­tus.  The per­sons and acts sub­ject to pen­al­ty under each stat­ute, as well as the po­ten­tial vic­tims, are en­tire­ly dif­fer­ent.  Since defen­dant was not a phy­si­cian per­form­ing an abor­tion on a viable fe­tus, he could not be liable under the Abor­tion Law; any physi­cian per­forming an abor­tion is except­ed from prose­cution under the feti­cide statute.

The availability of different penalties for offenses that are related but not identical does not violate the consti­tutional prohibition against disproportionate penalties.  
People v. Park­er
, 277 Ill. App. 3d 585, 591, 660 N.E.2d 1296, 1300 (1996).  Despite de­fendant's contention that both statutes pro­fess to protect the unborn, the statutory schemes are not even similar.

Defendant next contends the testimony by Jennifer's case­worker, Jodi Grant, that she heard Jennifer tell the defen­dant she was preg­nant, was im­properly ad­mitted hearsay used by the State to es­tab­lish sub­stan­tive evi­dence of an element of the offense of feti­cide.  Grant tes­tified she went to the victim's resi­dence on June 7 to take Jennifer to So­journ House.  While wait­ing, Jennifer received two phone calls from the de­fen­dant, to whom Grant also spoke.  The court first gave the jury a lim­it­ing in­struc­tion, and Grant then testi­fied that she heard Jennifer men­tion she was preg­nant.  Over defendant's ob­jec­tion, the trial court ad­mit­ted the tes­timo­ny "for the pur­pose of show­ing that the vic­tim advised the defen­dant she was preg­nant, not that it's proof that she was."  Hear­say testimony is an out-of-court state­ment offered to prove the truth of the matter as­sert­ed and is dependent on the credi­bility of the out-of-court de­clarant.  
People v. Rogers
, 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226 (1980).  Where an out-of-court state­ment is of­fered for some purpose other than to establish the truth of the matter asserted, the statement is not hearsay and is admissi­ble.  
People v. Al­banese
, 102 Ill. 2d 54, 70, 464 N.E.2d 206, 214 (1984).  Testi­mony of out-of-court statements used other than to establish the truth of the matter asserted does not rest for its value on the credibility of the out-of-court de­clarant but, rath­er, on the credibility of the witness, who was present in court and subject to cross-examina­tion.  
People v. Smith
, 236 Ill. App. 3d 812, 819, 602 N.E.2d 946, 952 (1992).  The State argues that the tes­timony was not offered for its truth, 
i.e.
, that Jennifer was pregnant, because this was estab­lished by Jennifer's treating physician and the coroner, but only to show that the conversation had occurred and the defendant had knowl­edge of the pregnancy.  We agree.

A statement that is offered to prove that a listener had notice of the information contained therein, rather than to prove the truth of the matter asserted, is not hearsay.  See 
Kochan v. Owens-Corning Fiberglass Corp.
, 242 Ill. App. 3d 781, 806, 610 N.E.2d 683, 699 (1993).  A statement is not hear­say "when offered for the purpose of showing that the listener was placed on notice or had knowledge. ***  [T]he fact that the statement was made is relevant for its effect on the listener without regard to the truth of the matter asserted."  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.5, at 648 (6th ed. 1994).  The statement by Grant was not offered for its truth, that Jennifer was pregnant, but solely to show de­fendant had knowledge of the pregnancy, and the jury was instruct­ed to consider the testimony for this limited purpose.  The tes­timony was not hearsay and was properly admitted.

Defendant next argues his gross intoxication ren­dered him unable to knowingly waive his 
Miranda
 rights and the court erred in not granting his motion to suppress.  In sup­port, defen­dant points to (1) statements made by Detective Oney to Grant that de­fen­dant was "drunk­er than 18 Indi­ans" or "falling down drunk" at the time of the offense; (2) the testi­mony of Oney, De­tec­tive Ross, and arresting offi­cer Schober that they noted an odor of alco­hol on the defendant's breath and his glassy eyes; and (3) defendant's state­ments that he had been drinking heavi­ly on the day prior to the of­fense and into the early morn­ing hours on June 9.  The defen­dant claims that Oney's and Ross' statements that they did not believe the de­fen­dant was intoxicat­ed at the time of in­terro­ga­tion were "clear­ly unreason­able" and that this is a stan­dard of review promulgated in 
People v. Clark
, 92 Ill. 2d 96, 440 N.E.2d 869 (1982), as an exception to the def­er­ence normally ac­corded the trial court.

The trial court is in the best position to determine the credibility of witnesses at a suppression hearing and to resolve any conflicts in the evidence, and its decision will not be reversed on review unless con­trary to the mani­fest weight of the evi­dence.  
People v. Rogers
, 123 Ill. 2d 487, 495, 528 N.E.2d 667, 671 (1988).  The fact that the de­fendant was under the in­fluence of alcohol does not render his statements inadmis­sible unless the evidence clearly establishes that he was so gross­ly in­toxicated he no longer had the capacity to waive his rights.  
People v. Feagans
, 134 Ill. App. 3d 252, 259, 480 N.E.2d 153, 158-59 (1985).

In 
Clark
, the su­preme court up­held the trial court's deni­al of a mo­tion to sup­press, stating that the trial court's decision would not be dis­turbed unless clearly erroneous.  It then noted that although the trial court failed to state its reasons for denial of the motion to suppress, the trial court ap­par­ent­ly found tes­ti­mo­ny of the offi­cers more cred­i­ble than that of the defen­dant, and the supreme court could find no ground on which to find the officer's testi­mony clear­ly unrea­son­able.
  
Clark
, 92 Ill. 2d at 99, 440 N.E.2d at 871
.  Contrary to defen­dant's interpretation, the 
Clark
 court at no time indicated it was announcing a new standard of review ac­cording less def­er­ence to the trial court.  Its com­ments were mere­ly a charac­ter­ization of the absence of evi­dence sup­porting defendant's contention.

In this case the ar­resting officer testified that de­fen­dant did not display any difficulty walking up the church steps with his hands behind his head, or when he was handcuffed and walked to the patrol car, and his speech was normal and co­her­ent.  Both Offi­cers Oney and Ross testified that the defendant's speech was not im­paired and that he understood the questions put to him during the interview.

As to Oney's statement to Grant, that defendant was "drunker than 18 Indians" at the time of the offense, the trial court determined that Oney expressed an opinion, not based on personal observation or knowledge, but based on information of alcohol consumption sup­plied by defendant and a witness who had been drinking with defendant during the morning hours of June 9.  Since there was con­sid­er­able evi­dence to sup­port the trial court's denial of sup­pres­sion of the defendant's state­ments, we find its determi­na­tion not against the mani­fest weight of the evi­dence.

Defendant last argues that the trial court erred in find­ing him subject to mandatory natural life sentences under sec­tion 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West Supp. 1995)) for com­mis­sion of first de­gree mur­der and feti­cide, contending that natural life sentenc­es are mandato­ry only when both offenses are "mur­der," a classi­fication to which the feticide statute does not belong.  The feti­cide stat­ute pro­vides that the "sen­tence for inten­tional homi­cide of an unborn child shall be the same as for first degree murder, except that the death penal­ty may not be imposed."  720 ILCS 5/9-1.2(d) (West 1994).  The sen­tencing pro­vi­sions for first degree murder in rele­vant part pro­vide "the court shall sentence the defendant to a term of natural life imprison­ment when the death penalty is not imposed if the defen­dant *** is found guilty of murdering more than one victim[.]"  730 ILCS 5/5-8-1(a)(1)(c)(ii) (West Supp. 1995).

This court's primary objective when construing the meaning of a disputed statute is to ascertain and give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the language of the statute itself.  
People v. Tucker
, 167 Ill. 2d 431, 435, 657 N.E.2d 1009, 1011 (1995).  Crim­i­nal or penal statutes must be strictly construed and may not be extended in their application to cases that do not, by the strictest construction, come under their provisions.  
People v. Parvin
, 125 Ill. 2d 519, 525, 533 N.E.2d 813, 815 (1988).  Gener­ally, any ambiguities in a criminal statute must be re­solved in favor of the defendant.  
People v. Robinson
, 172 Ill. 2d 452, 457, 667 N.E.2d 1305, 1307 (1996).

In 
People v. Magnus
, 262 Ill. App. 3d 362, 633 N.E.2d 869 (1994), the reviewing court 
sua
 
sponte
 raised the ques­tion of wheth­er a defendant
 convicted of one count of first de­gree murder and one count of second degree murder was subject to man­datory natu­ral life sentences pursuant to a precursor but similar sec­tion of the Code.  The court found the phrase "mur­dering more than one victim" ambiguous in that it could ei­ther apply only to multi­ple first degree murders or to all classes of mur­der of either first or second degree.  
Magnus
, 262 Ill. App. 3d at 366, 633 N.E.2d at 873.  The court construed the statute as ap­ply­ing only to multiple first degree murders, reasoning that (1) when sec­tion 5-8-1(a)(1)(c) was adopted, there was only one cate­gory of mur­der because second degree murder was designated vol­un­tary man­slaughter; and (2) rules of statu­tory con­struction man­date that ambiguities in penal sentences be resolved in favor of the defen­dant.  
Magnus
, 262 Ill. App. 3d at 366-67, 633 N.E.2d at 873-74.

Even though the 
Magnus
 court found an ambiguity within the first degree murder sentencing statute as to wheth­er it en­com­passed second degree murder, there is no ex­press di­rec­tion with­in the second de­gree murder statute--as there is in the feti­cide statute--direct­ing sen­tencing to be im­posed "the same as for first degree mur­der."  720 ILCS 5/9-1.2(d) (West 1994).  Since the feti­cide stat­ute man­dates ap­pli­ca­tion of the first degree murder penal scheme, we find no ambi­gu­ity under that statute's natu­ral life im­pris­on­ment penalty merely because it references "murder."  If the leg­isla­ture did not contemplate that the clause "found guilty of murder­ing more than one victim" in the sentenc­ing pro­visions for first degree murder would encom­pass feti­cide, there would have been no rea­son for it to expressly exempt the death pen­alty, since provi­sions authorizing imposition of the death penal­ty also apply when "the de­fen­dant has been convicted of murdering two or more indi­vidu­als."  720 ILCS 5/9-1(b)(3) (West 1994).  Both claus­es reference "murder," yet the legis­la­ture chose to ex­cept only the death penalty, and not mandatory natural life im­prison­ment, as sen­tenc­ing options appli­cable to the feti­cide stat­ute.  Where a stat­ute is unam­bigu­ous, the court may not read into it excep­tions other than those pro­vided by the legisla­ture.  
Buckellew v. Board of Educa­tion
 of Georgetown-Ridge Farm Community Unit School District No. 4
, 215 Ill. App. 3d 506, 511, 575 N.E.2d 556, 559 (1991).  The leg­isla­ture provid­ed only one excep­tion, the death penalty, to the sen­tencing pro­vi­sions appli­cable to feti­cide, and this court can add no other. 

Defendant's convictions and sentences are af­firmed.

Affirmed.

GARMAN and KNECHT, JJ., concur.